**UNITED STATES of America**

v.

**John Herman MELVIN.**

**No. 66–250–Cr.**

United States District Court
S. D. Florida.
Aug. 26, 1966.

William A. Meadows, Jr., U. S. Atty., and Michael J. Osman and Edward A. Kaufman, Asst. U. S. Attys., for plaintiff.

Tobias Simon, Miami, Fla., for defendant.

## OPINION

ATKINS, District Judge.

The defendant seeks to suppress evidence seized incidentally in the service upon him of two City of West Palm Beach arrest warrants for alleged commission of misdemeanors. He contends the seizure was illegal under the Fourth Amendment of the United States Constitution. The evidence thus obtained forms the principal basis for a Federal grand jury indictment of the defendant for alleged transportation of obscene films and literature from South Carolina to Florida.

Lt. F. Dickerson, of the West Palm Beach Police Department, in his capacity as Deputy Clerk, issued the arrest warrant for failure to register as a felon. In so doing he also signed the Municipal Judge's name. The warrant was issued *before* another West Palm Beach police officer, Lt. Wm. Eaton, signed the affidavit regarding such failure to register. On the basis of a telephone call from Lt. Eaton to Lt. Dickerson at the police station Dickerson prepared and executed an arrest warrant charging exhibition of an obscene film (Defendant's Exhibit 4) and there signed the Municipal Judge's name and City Clerk's name to that instrument. He also prepared an affidavit, in identical language as the warrant, and took the two instruments to the motel where Lt. Eaton then signed the affidavit.

The question of the admissibility, vel non, of the evidence seized is determined by the validity of the arrest warrants issued by the City of West Palm Beach.

A corollary of this question is whether federal standards govern the issuance of city arrest warrants. This court holds that they do.

■ The Florida Statute (§ 901.02) F.S.A. authorizes an arrest warrant to be issued "if the magistrate, from the examination of the complainant and other witnesses, if any, has reasonable ground to believe that an offense was committed within his jurisdiction and that the person against whom the complaint was made committed it * * *" Sec. 168.04, Florida Statutes 1965, F. S.A., and § 4.09(6) of the West Palm Beach City Code grant the (City) Clerk the power to issue arrest warrants.

■ The Fourth Amendment of the United States Constitution is made applicable to states and municipalities by the Fourteenth Amendment of that Constitution. United States v. Rabinowitz, 339 U.S. 56, 94 L.Ed. 653, 70 S.Ct. 430.

The Fourth Amendment to the United States Constitution is as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ The requirement of the Fourth Amendment is applicable to both *federal* arrest and search warrants. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed. 1503; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, the Supreme Court of the United States held that a search warrant could be issued and signed only by "a neutral and detached magistrate." *Johnson* involved an arrest and search, without a warrant, by a City of Seattle police officer. Acting on information that unknown persons were smoking opium in a particular hotel, the officer went to the hotel. He smelled burning opium, the odor of which, in his opinion, was distinctive and unmistakable. The officer demanded entry and the occupant stepped back and admitted the officer who immediately placed the occupant under arrest and stated that there would be a search incident to the arrest. The search revealed the incriminating opium. Subsequently the defendant challenged the search as a violation of her rights.

Holding the evidence inadmissible, the Court said:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that these inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is of course of grave concern to society and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

■ Since the evidence which is made the subject matter of the motion to suppress also forms the support for a Federal grand jury indictment, this court is constrained to hold that the questioned evidence could not be admitted into evidence on that charge. Irrespective of the question of whether or not the federal standards, as judicially determined from the Fourth Amendment, are binding upon the states, the evidence before this court could not constitutionally be admitted during the trial under the federal grand jury indictment. To permit state seized evidence to be admitted in evidence on a federal indictment, which evidence in the abstract was seized in derogation of federal standards would emasculate the constitutional standards that previously have been set by the United States Supreme Court. In essence, that which cannot be done directly cannot be accomplished indirectly.

■ The crux of the issue, however, is whether or not the federal standards applicable to federal arrest warrants are by virtue of the Fourteenth Amendment binding upon the states. This question is answered in the affirmative. In Aquilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court of the United States expressly held the federal standards applicable to search warrants obligatory upon the states. There, failure to establish sufficient probable cause for the issuance of a search warrant, as required by federal standards, constituted a violation of the Fourth Amendment as incorporated into the Fourteenth. Warrants for arrest of necessity include within their scope of authority the right of an officer to make a search incidental to the arrest.

An arrest warrant, with all of the sanctions upon liberty which it authorizes, is certainly no less sacrosanct than a search warrant. If the requirements of the Fourth Amendment must be met by all authorities in the issuance of a search warrant, there is every reason to conclude that similar standards must be observed in the issuance of an arrest warrant. The rule announced in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947) is therefore binding upon the states.

■ The government has urged that "every little Hamlet" could not be expected to meet federal standards in the issuance of arrest warrants. The Fourth Amendment requirements were not designed to apply only to urban areas; the people in "every little Hamlet" have an equal right to be secure against unreasonable searches and seizures.

Accordingly, the motion to suppress will be granted. Counsel for the defendant will submit an order.