## In re WALLACE & TIERNAN CO., Inc., et al.
### No. 6055.

District Court, D. Rhode Island.

Feb. 6, 1948.

Edwards & Angell, of Providence, R. I. for Wallace & Tiernan Co., Inc., Wallace & Tiernan Products, Inc., and Wallace & Tiernan Sales Corporation.

Hogan & Hogan, of Providence, R. I. (Charles H. Tuttle and Loren N. Wood, both of New York City, and William H. Edwards, and Laurence J. Hogan, both of Providence, R. I., of counsel), for Novadel-Agene Corporation.

Grant W. Kelleher, Sp. Asst. to Atty. Gen., Alfred Karsted, Sp. Atty., of Boston, Mass., John F. Sonnett, Asst. Atty. Gen., and George F., Troy, U. S. Atty., of Providence, R. I., for the Government.

HARTIGAN, District Judge.

This matter was heard on the motions of Wallace & Tiernan Company, Inc., Wallace & Tiernan Products, Inc., Wallace & Tiernan Sales Corporation and Novadel-Agene Corporation and on the affidavit of William H. Edwards, Esq., filed May, 9, 1947, "that all photostat copies of documents referred to in the 'Order on Motion for Return of Impounded Documents' entered by this Honorable Court on the 19th day of March, 1947, in Criminal Action number 6055 be returned to the movants forthwith. * * *"

The affidavit of Mr. Edwards sets forth in substance that on December 10, 1946, there was filed in this Court in Indictment No. 6055, two motions for return of impounded documents in behalf of Wallace & Tiernan Company, Inc., Wallace & Tiernan Products, Inc., and Wallace & Tiernan Sales Corporation and Novadel-Agene Corporation, which asked for the return of all documents produced by these companies in compliance with certain subpoenas issued at the instance of the grand jury which had returned Indictment No. 6055, such subpoenas being listed in said motions.

The affidavit further sets forth that on March 19, 1947, an order was entered in

Indictment No. 6055 granting said motions and ordered the immediate return of the documents referred to in said motions.

The affidavit further alleges that to the affiant's knowledge the attorneys and representatives of the United States of America have made a large number of photostat copies of said documents and still retain them, unlawfully and without justification, in their possession; that on February 7, 1947, the affiant made to Alfred Karsted, Esq., Special Attorney for the United States, an oral request for the return of such photostat copies and again a similar request was made May 2, 1947. The requests so made had not been complied with and, accordingly, on May 5, 1947, letters from the attorneys for the Wallace & Tiernan Companies and Novadel-Agene Corporation were sent to the United States Attorney for this District making formal demand for the immediate return of all photostat copies and that no definite reply, either by way of compliance or refusal, has been received.

The Government has filed no counter-affidavit.

The "Order on Motion for Return of Impounded Documents" entered March 19, 1947, is as follows:

"This cause came on to be heard on the motions of the defendants, Wallace & Tiernan Company, Inc., et al., and Novadel-Agene Corporation, et al., respectively, for return of impounded documents, etc., and was argued by counsel, and thereupon, upon consideration thereof, it is hereby Ordered:

"1. That the documents listed in said motions be, and they hereby are, made available to the defendants forthwith for return to them;

"2. That the orders of impounding described in said motions be, and they hereby are, vacated and rescinded."

April 29, 1946, a grand jury was impaneled in this district. On the same date subpœnas duces tecum were issued to Wallace & Tiernan Company, Inc., Wallace & Tiernan Products, Inc., and Wallace & Tiernan Sales Corporation.

Motions to quash all of the subpœnas were filed on the ground, among others, that the subpœnas constituted an unreasonable search and seizure in violation of the Fourth Amendment of the Constitution of the United States.

May 22, 1946, after hearing and argument, the motions to quash were denied.

September 6, 1946, subpœnas duces tecum were issued to Novadel-Agene Corporation, Industrial Appliance Corporation and the three Wallace & Tiernan Companies. Motions to quash these subpœnas were also filed. However, a satisfactory compliance with the subpœnas was worked out by negotiation between attorneys for the Government and the corporations. Pursuant to the subpœnas, documents were produced by the movants and were impounded by the Court upon application by the Government.

November 18, 1946, the grand jury returned an Indictment, No. 6055, charging eighteen defendants, including the movants, with violations of Sections 1 and 2 of the Act of Congress of July 2, 1890, as amended, commonly known as the Sherman Act, 15 U.S.C.A. §§ 1, 2.

December 10, 1946, the movants filed a motion for the return of the impounded documents.

December 21, 1946, the defendants (except Shutte & Koerting Company) in said indictment moved to dismiss the indictment on the ground, among others, that the grand jury was illegally constituted in that women were intentionally, arbitrarily and entirely excluded from the panel from which the grand jury was drawn.

March 19, 1947, the Court, after hearing argument on the motions to dismiss, held that the grand jury was illegally constituted and that said indictment should be dismissed and an order to that effect was entered April 7, 1947.

April 1, 1947, the Government filed a motion to dismiss the indictment as against Shutte & Koerting Company and the motion was granted.

The Government did not appeal the Court's decision dismissing the indictment and ordering the return of the impounded documents.

The Government now objects to the return of all photostat copies made by it of

the documents referred to in the order of March 19, 1947.

It is the Government's contention that a subpœna being a distinct and separate process of the court, is not rendered illegal by the fact that the grand jury for whose consideration the documents were subpœnaed, was an illegally constituted grand jury.

The Government in its brief states: "Since subpœnas constitute but a 'figurative' search and seizure, the question of whether they ever constitute an unreasonable search and seizure under any conditions requires a balancing of the public interest against private security." In support of this they cite Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 166 A.L.R. 531, 90 L.Ed. 614.

It seems to me that the Oklahoma Press Pub. Co. case is not analogous to the instant case. There the Supreme Court said, 327 U.S. at page 210, 66 S.Ct. at page 506, 166 A.L.R. 531, 90 L.Ed. 614: "All the records sought were relevant to the authorized inquiry, the purpose of which was to determine two issues, whether petitioners were subject to the Act and, if so, whether they were violating it." The authorized inquiry referred to investigations conducted by the Administrator pursuant to § 11 (a) of the Fair Labor Standards Act, 52 Stat. 1060, 29 U.S.C.A. § 211 (a).

The subpœnas duces tecum in the instant matter commanded the movants to appear before the grand jury on a day certain and bring with them and produce certain records and then there to testify concerning certain matters under investigation by the grand jury and not depart the court without leave thereof or of the United States.

The appearance of the witness and the production of the records in response to such subpœnas cannot be said to be voluntary when failure to appear would subject him to punishment.

The cases are too numerous to cite that hold that either actual force or legal compulsion may constitute unreasonable search and seizure.

The subpœnas did not violate the Fourth Amendment and the Government was entitled to have the documents produced for presentation to a legal grand jury. It seems to me that when the grand jury turned out to be illegally constituted and the indictment was dismissed that the subpœnas amounted to unreasonable searches and seizure in violation of the Fourth Amendment:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

There is nothing in the record that convinces me that the movants in their role as witnesses or defendants waived any of their rights. As witnesses they contested the subpœnas and contended that they violated the Fourth Amendment and when they became defendants they made timely objection to the legality of the grand jury.

I find nothing in the record that indicates that the movants gave permission to the Government's representatives to make photostat copies of the documents which were produced in compliance with the subpœnas.

In Johnson v. United States, 68 S.Ct. 367, 370, the Supreme Court said:

"Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law."

It is my opinion that the Government, gaining access to the documents by means of an illegal grand jury, has no "valid basis in law for the intrusion," which the Government committed in making the photostats of said documents and retaining possession of them.

218

The motions, therefore, are granted.

Since these motions stem from Indictment No. 6055, the Clerk is ordered to make the motions, the hearings thereon, and this opinion part of the record of said indictment.