Arnold P. Etelson, J.
Three defendants are charged with the class B misdemeanor of loitering in the first degree, section 240.36 of the Penal Law, and two with the class A misdemeanors of possession of a dangerous drug, section 220.05 of the Penal Law. They are alleged to have committed the stated crimes at 8:30 p.m. on November 4,1968 in an apartment of the defendant Littell. Each of the defendants was searched in the apartment. *743 the Spring Valley police officers not being armed with a search warrant, and the People consented to the court’s granting a suppression hearing pursuant to the defendants’ motion for such relief (Code Crim. Pro., § 813-c).
Three police officers testified at the hearing substantially as follows: shortly after 8:00 p.m. a telephone call was received by the Police Department from the wife of the superintendent of the subject garden apartment complex stating that she thought that there was a ‘ ‘ pot ’ ’ party in progress at the defendant Littell’s apartment. Detective Balph Krassow was detailed to the scene and after speaking to the informer went to the scene and outside the door of the apartment smelled an odor which he believed to be marijuana. He also heard voices and laughing inside. Five to ten minutes later he telephoned Sergeant Bichard Friscino at police headquarters advising him of the smell of marijuana, and then obtained a passkey to the apartment from the informer. Sergeant Friscino came to the scene immediately with Patrolman George Gibson. Officer Gibson testified he smelled a strong odor in the hallway and heard music and voices coming from within the apartment. Sergeant Friscino testified as to the smell of marijuana coming from within the apartment, which odor was stronger upon entering the apartment. Entrance without knocking was made with the passkey about one minute after Sergeant Friscino appeared with Patrolman Gibson outside the door of the apartment. All three officers, in addition to smelling marijuana, admitted on cross-examination to detecting a sweet smell which they believed to be the burning of incense. Each of the officers testified to an acquaintance with the smell of marijuana in his police duties, experience and/or schooling, in varying degrees.
The defendants were found in the apartment, two sitting on a couch, two on chairs and one on the floor. The smell already referred to was emanating from an incense burner on the middle of the floor. The material in the burner was not tested. The apartment and the defendants were searched and marijuana and other items were recovered. It is interesting to note that the informer told Detective Krassow when he arrived that there was a peculiar odor which she thought was going on for several days.
The defendants have cited numerous cases, but rely most heavily upon Johnson v. United States, (333 U. S. 10). In that case the United States Supreme Court in 1947 by a 5-4 decision held that Federal narcotic agents, told by a confidential informer, a known narcotic user, that unknown persons were smoking opium in a Seattle, Washington hotel, could not introduce the *744 evidence of opium and smoking apparatus, warm from use, against the defendant which evidence was found in her apartment pursuant to a warrantless search. The agents knocked on the door before entering and after a slight delay and “ shuffling or noise ’ ’ in the room, defendant opened the door and the agents stepped in. The court is of the opinion that under these facts the Government had a stronger case in Johnson than the People do in the case at bar. Suppression having been granted in Johnson, defendants’ motion must be granted herein. The expertise of the Federal narcotic agents in that field and their reliance originally on a tip from a known user obviously familiar with the smell of narcotics and the somewhat gentler manner in which access was made into the apartment in Johnson were not sufficient to satisfy the majority in that court that the search complied with' the Fourth Amendment of the United States Constitution. The opium sought to be suppressed was the same item of evidence that would have convicted Johnson. In the instant case the items sought to be suppressed are not the same as led the police to enter the apartment. What led them to the apartment was in part the smell of an alleged dangerous drug, marijuana, which was never proven to be as claimed. This, of course, is after the fact, but is an example of why it is not unreasonable to require that a search of premises be preceded by a search warrant ‘ ‘ upon probable cause supported by Oath or Affirmation. ” What is not grasped by those who criticize the necessity of the search warrant in the proper case is aptly put in Johnson: “ Any assumption that evidence sufficient to support a magistrate’s disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people’s homes secure only in the discretion of police officers. Crime, even in the privacy of one’s own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.” (333 U. S. 10, 14.)
The Government in Johnson argued that the agents had probable cause for believing that a felony was committed or was being committed. Under New York law an arrest and the search incidental thereto would be permitted. This does not appear to be answered in the court’s decision. Query, how were the *745 Federal agents or the local police to know whether there was a sufficient quantity of the forbidden substance in the apartment to constitute a felony? Eegarding the Johnson case, it may well be that possession of any quantity of opium would constitute a felony; not so marijuana, at least under New York law. The recovery of a sufficient quantity to constitute a felony should not cure an unpermitted search at the outset. (But, see, 5 Criminal L. Bull., No. 1, p. 7.) Suppose a police officer walking his beat heard a scream emanating from a ground floor apartment and upon racing inside heard a gunshot from that apartment. Upon barging through the door of the apartment suppose the officer was to find a 10-year-old girl staring frightfully at her 13-year-old brother pointing his smoky cap pistol at her, and on the table next to the brother, a quantity of narcotics surrounded by their parents. If the brother was three years older and had fired a starter pistol in violation of the fireworks section of the Penal Law, at most a misdemeanor would have been committed, yet out of the presence of the police officer. The parent defendants in such case should not have the narcotics suppressed. Common sense must play a large part in construing the reasonableness of a search. The emergency of that intrusion should not shock the majority of people who insist upon the privacy of a man’s castle.
The informer told Detective Krassow that she had been suspicious about the apartment for several days. The apartment had only recently been rented. The defendants were not fleeing, nor should the officers have been in hot pursuit. They might have applied for a search warrant that evening. Or, in view of the stated suspicious circumstances for several days, a further investigation could have been begun and a search made with a warrant at the opportune repetition of the event.
The court concludes that the search was an unreasonable one in the totality of the circumstances evincing a breach of the privacy of one’s home. The evidence must therefore be suppressed.
Submit orders on notice.