■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EUGENE K. K., JR., (Anonymous), Appellant.— Judgment of the County Court, Nassau County, rendered September 16, 1968, affirmed. No opinion. Christ, Acting P. J., Benjamin and Kleinfeld, JJ., concur; Martuscello, J., dissents and votes to reverse the judgment and remit the case to the County Court for further proceedings not inconsistent with the following memorandum in which Munder, J., concurs: Defendant appeals from a judgment of the County Court, Nassau County, adjudging him a youthful offender, on his plea of guilty, and sentencing him under article 9 of the Mental Hygiene Law to an indefinite period not to exceed 36 months in the care and custody of the Narcotic Addiction Control Commission. The sole issue raised by appellant is whether his pretrial motion to declare a search invalid and to suppress evidence was properly denied after a hearing. The facts as adduced at the hearing are as follows: As a result of an anonymous telephone call to Police Headquarters, four police officers proceeded to Dix Lane and Parsons Drive in the Town of Hempstead, at approximately 1:30 P.M. on February 2, 1968. The police were allegedly informed that there were four suspicious men in that area. When they arrived, two of the officers stopped four men and asked them to identify themselves and state their business in the area. A police sergeant ordered one of the men to remove his hand from his pocket. When this was done an open knife was produced. The man was searched and a brown manila envelope containing marijuana was taken from him. Defendant and the other men were then ordered to empty their pockets. When defendant complied with this order, three brown manila envelopes were produced and it was later ascertained that they contained marijuana. Defendant was *then* arrested and a thorough search of his person was made. The hearing court concluded that the patrolman had sufficient probable cause to suspect that crime was being committed and that the search was a lawful and incidental part of a proper arrest. Section 180-a of the Code of Criminal Procedure, the "Stop and Frisk Law", provides: "§ 180-a. Temporary questioning of persons in public places; search for weapons. 1. A police officer may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or any of the offenses specified in section five hundred fifty-two of this chapter, and may demand of him his name, address and an explanation of his actions. 2. When a police officer has stopped a person for questioning pursuant to this section and reasonably suspects that he is in danger of life or limb, he may search such person for a dangerous weapon. If the police officer finds such a weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person." Under this statute it is clear that there is no justification for a search under subdivision 2 unless the officer has a reasonable suspicion that a felony or any of the offenses specified in section 552 of the Code of Criminal Procedure has been committed, is being committed or is about to be committed, and after stopping the suspect the officer has reasonable suspicion that he is in danger of life or limb. Accordingly, if the requisites of subdivision 1 are not met, a search may not be made. Furthermore, even if the requisites of subdivision 1 are met, the search may not be made unless the officer reasonably suspects that he is in danger of life or limb. I am of

the opinion that under the facts at bar the requirements of subdivision 1 were not met and accordingly, since the officers did not have reasonable suspicion to stop defendant under subdivision 1 of section 180-a of the Code of Criminal Procedure, the detention was illegal and the evidence produced by the ensuing search should have been suppressed. The facts at bar are to be contrasted with those in *People* v. *Taggart* (20 N Y 2d 335) where the police were informed by an anonymous telephone call that there was a white male youth at a certain location who had a loaded 32-calibre revolver in his left-jacket pocket. The caller also stated that the youth was 18 years of age, had blue eyes and blond hair and was wearing chino-type pants. On the basis of such information an officer proceeded to the location where he observed the defendant from across the street. He further observed that the defendant perfectly matched the description given and that he was standing in the middle of a group of children. The officer thereupon crossed the street, took the defendant by the arm, put him against the wall and took a revolver out of his left-hand jacket pocket. On these facts the Court of Appeals held that the search was valid under section 180-a. The court noted that the applicability of that statute was divided into two stages: the legality of the detention and the legality of the frisk (*People* v. *Peters,* 18 N Y 2d 238, 242, affd. 392 U. S. 40). As to the detention, the court stated that the officer had at least a reasonable suspicion that the defendant was committing a crime when he first observed him. Since the information as to the description proved correct, the officer was justified in suspecting that the remainder of the information [as to the gun] might be correct. In acting upon this assumption, the court reasoned, the officer was exercising a reasonable and necessary police power for the prevention of crime and the preservation of order. The court then stated (20 N Y 2d 335, 339–340) : " This case raises a very serious problem which has not yet been faced directly under the newly evolved rules excluding evidence obtained unlawfully under the principle in *Mapp* v. *Ohio* (367 U. S. 643). There are exigencies affecting life, limb, or grave property damage in which the police receive information of crime, not sufficient to establish probable cause for arrest and incidental search, and yet which, to any reasonable man, demand the taking of police action to prevent serious harm. In such cases it is not enough to say that nothing should be done, or that if something is done, the resultant evidence should be suppressed. To do nothing is to succumb supinely to serious injury to members of the public or to the State itself, sincerely believed to impend, particularly as the test for action is supposed to be what a reasonable man would do under the circumstances (see *Ker* v. *California,* 374 U. S. 23, 34–35; *Johnson* v. *United States,* 333 U. S. 10, 13–14). To tolerate unconstitutional action as a matter of necessity, as some argue, but then to reject use of the evidence obtained, is hardly a proper way to justify illegal conduct as necessary, on the one hand, but to limit, on the other hand, the consequences of those actions as illegal. *Needless to add, the serious problem is suggested only in cases involving serious personal injury or grave irreparable property damage and not by the problems associated with the enforcement of sumptuary laws, such as gambling, and laws of limited public consequence, such as narcotics violations, prostitution, larcenies of the ordinary kind, and the like. In this case a loaded pistol was involved.* And one could hypothesize parallel cases involving explosives, poisons, or the larceny of an irreplaceable classic work of art. The presence of the suspect among a group of children is a particular circumstance suggesting that the occasion was not one in which a preliminary interrogation and perhaps a limited frisk before search was indicated, if the safety of the children or the police officer was to be respected. For the police to have ignored the informa-

tion received is not an acceptable thesis, despite the anonymity and, therefore, the undetermined reliability of the source. The discussion is not whether exigent circumstances justify a departure from constitutional limitations. That view is impermissible. The point is that the Constitution forbids ' unreasonable' searches and what is reasonable is determined by the circumstances and the exigencies are not to be ignored (see *Camara* v. *Municipal Ct.*, 387 U. S. 523, 538–539) " (emphasis supplied). The court then concluded that, assuming that the officer had at least a reasonably based suspicion that the defendant was committing a crime, requiring some kind of police action, it followed that he had a right to search the defendant for the weapon upon which the suspected crime was predicated. Finally, the court pointed out that using anonymous information as a basis for intrusive police action is highly dangerous. To limit its use to exigent circumstances, the court said, the police action must relate to matters gravely affecting *personal or public safety* or irreparable harm to property of extraordinary value. *It should not extend to all contraband or criminal violation.* It seems clear to me that *Taggart* is completely distinguishable on its facts from the case at bar. Here the anonymous telephone call to the police allegedly informed them that there were four suspicious men loitering in the area of Parsons Drive and Dix Lane. Upon arriving at the scene, the officers observed four men in close proximity. As the police approached, the four men started to walk west on Dix Lane. The officers got out of the police car and asked the men to identify themselves and state the nature of their business in the area. One of the men was ordered to remove his hand from his pocket and an open knife was produced. Thereafter, the other three men were ordered to empty their pockets. In *Taggart,* unlike the case at bar, the anonymous report indicated that the defendant had a gun and described his appearance. Here, however, the report only indicated that four suspicious men were in the area. As the court noted in *Taggart,* once the description proved accurate, the officer could reasonably believe that the report as to the gun was also accurate and therefore his suspicion that the defendant was committing a crime was reasonable. Here, on the other hand, there was no report of a weapon or any criminal activity. The officers observed no illegal activity and the knife which was taken from one of the men was produced only *after* the officer ordered him to remove his hand from his pocket. Prior thereto the officers had no reason to believe that a knife would be produced. Furthermore, regardless of what might have been found on the other man, there was no reason whatsoever to justify a search of the defendant herein. Finally, as noted in *Taggart,* the type of crime involved is a factor in determining whether there was sufficient reasonable suspicion to stop a man. There, a gun and children were involved and thus a serious danger affecting life and limb existed. At bar, there was no such situation and therefore the detention was illegal.