ON REHEARING
The present case, up for rehearing by this court, centers on the question of whether or not police officers may legally enter a private residence without a warrant or permission from its occupants to pick up a runaway juvenile who can be seen inside and whose parents have requested her return. In our original disposition of the case/ in which we answered this question negatively, we made, after a careful analysis of the testimony and briefs of both *853 counsel, a finding of facts which need not be restated here. However, our holding at that time did not require a determination of the truthfulness of the officer’s testimony that he saw the runaway child through the kitchen door upon returning to the home. Upon reconsideration of the case, this allegation has become relevant, and we now accept it as fact. With this single exception we affirm our original factual findings.
This court, in reversing a finding of delinquency on the charge of resisting arrest, did not find fault with the warrantless arrest of a juvenile, per se. It held that R.S. 13:1570, subd. A (3) and article 213 of the Louisiana Code of Criminal Procedure clearly authorize an officer to apprehend the child in such a case.[1] It noted that the statutes covering this situation are peculiar to juveniles'and analogized a child’s absenting himself from home to a misdemeanor being committed by an adult in the presence of an officer who may make an arrest without first obtaining a warrant. What the court did fault, however, was the unauthorized entrance by police into a private residence to make the arrest without proper authority of the court, or a sufficient showing of emergency or the child’s need of protection to justify such intrusion. Therefore, it held that the Fourth Amendment of the Federal Constitution and Article 1, Section 7 of the Louisiana Constitution had been violated. It is this holding which is now being reconsidered.
The above mentioned constitutional provisions protect the right of the people to be secure against unreasonable searches and seizures providing that no warrants for such searches and seizures shall be issued but upon probable cause. At the heart of this court’s original decision were pronouncements of the United States Supreme Court, noted particularly in McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), that due process and the Fourth Amendment require that when police authorities enter a house to search for and arrest a person they must have a warrant unless “exigent circumstances” require their immediate entry. For this reason it will be helpful to reexamine the rationale of these decisions to determine if they do, in fact, prohibit the warrantless arrest which took place in the instant case.
McDonald involved a suspected illegal lottery operation which had been under surveillance for several months. Thinking that they had detected from the outside the sound of an adding machine, the police forced their way, without a warrant for search or arrest, into a rooming house in which the defendant had rented a room. They proceeded to his room, looked through the transom and observed the defendants engaged in the operation of a lottery. They demanded and obtained entrance, arrested the defendants, and seized evidence which was in plain view. Although the Supreme Court reversed their subsequent conviction, it did not do so on the ground that the police were not justified in arresting without a warrant persons observed in the act of committing a crime in the “privacy” of their home. In fact, in his concurring opinion Justice Jackson specifically stated that had police had lawful entrance to the building they would, after observing the crime in progress, have been justified in making the arrest:
“Doubtless a tenant’s quarters in a rooming or apartment house are legally as well as practically exposed to lawful approach by a good many persons with *854 out his consent or control. Had the police been admitted as guests of another tenant or had the approaches been thrown open by an, obliging landlady or doorman, they would have been legally in the hallways. Like any other stranger, they could then spy or eavesdrop on others without being trespassers. If they peeped through the keyhole or climbed on a chair or on one another’s shoulders to look through the transom, I should see no grounds on which the defendant could complain. If in this manner they, or any private citizen, saw a crime in the course of commission, an arrest would be permissible.” 335 U.S. at 458, 69 S.Ct. at 194.
What the court did hold in McDonald was that the circumstances surrounding the suspected lottery operation were neither so urgent nor pressing as to justify police in foregoing a warrant and breaking and entering the landlady’s bedroom in order to permit them to observe the crime in operation. Noting that there was sufficient time and adequate grounds for seeking a search warrant, the court refused to allow the constitutional barrier that protects the privacy of the individual to be hurdled so easily. In the course of its decision it elaborated on the purpose of the Fourth Amendment:
“We-are not dealing with, formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime, and the arrest of criminals.” 335 U.S. at 455, 69 S.Ct. at 193.
It can clearly be seen from the above quotation and the previously cited remarks by Justice Jackson that what the Court was contemplating was a situation where an impartial magistrate should determine if there was sufficient evidence to warrant entering to determine whether a crime was being committed and not one where a crime was actually being committed in his presence.
The Louisiana case of State of Louisiana ex rel. Naylor v. Walker, 206 F.Supp. 544 (1962) cert. denied, 371 U.S. 957, 83 S.Ct. 514, 9 L.Ed.2d 504, further supports this view. There it was held that a forced entry by an arresting officer was not illegal, as the officers, from their ,keyhole observations and previously obtained information, reasonably believed that a narcotics offense was being committed. See also United States v. Lindsly, D.C., 7 F.2d 247.
The U. S. Supreme Court case of Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 is another case in point. There, police officers, after detecting the odor of burning opium in a hotel hallway, entered a room without a search warrant and without knowing who was there. The room was searched, apparatus used in smoking of opium seized, and the occupant arrested. The Supreme Court overturned his subsequent conviction on the grounds that the Fourth Amendment had been violated. There again the court makes clear that the point of the Fourth Amendment is its requirement thát a neutral and disinterested magistrate determine if the evidence warrants an intrusion into the privacy of an individual. Obviously, this test has no application where an offense is being committed in full view of an arresting officer. Further evidence that this is the case can be found in the court’s answer in Johnson, supra, to the government’s contention that the search without warrant must be held valid because incident to an arrest: “This alleged ground of validity requires examination of the facts to determine whether the arrest itself was lawful. Since it was without warrant, it could, be valid only if for a crime committed in the presence of the arresting officer or for a felony of *855 which he had reasonable cause to believe defendant guilty” 333 U.S. 10, 15, 68 S. Ct. 369, 370. [Emphasis added] (In a footnote the Court explained, citing United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, that state law determines the validity of arrests without warrants, and this was the Washington law.) The important point is the Court’s recognition that a warrantless arrest of an individual may be made in his private quarters if he is there observed in the commission of a crime.
And in the case of Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L. Ed. 1663, the Supreme Court held valid the warrantless arrest of one engaged in the operation of an illegal still where he had been observed through an open door by a federal agent. Significantly, it did so despite the fact that there was sufficient time to obtain an arrest warrant:
“His arrest was therefore valid on the theory that he was committing a felony in the discernible presence of an agent of the Alcoholic Tax Unit, a peace officer of the United States. The absence of a warrant of arrest, even though there was sufficient time to obtain one, does not destroy the validity of an arrest under these circumstances. Warrants of arrest are designed to meet the dangers of unlimited and unreasonable arrests of persons who are not at the moment committing any crime. Those dangers, obviously, are not present where a felony plainly occurs before the eyes of an officer of the law at a place where he is lawfully present. Common sense then dictates that an arrest in that situation is valid despite the failure to obtain a warrant of arrest.” 334 U.S. at 699, 68 S. Ct. at 1232.
In light of the foregoing discussion it seems clear that a warrantless arrest of an individual in his private quarters under certain circumstances is proper and would be violative of neither the Fourth Amendment to the U. S. Constitution, nor Art. 1 Sec. 7 of Louisiana’s Constitution. It must now be determined whether the arrest in the instant case falls within constitutionally permissible bounds.
From the outset, this case is complicated by the fact that there is no actual “crime” being committed in the technical sense of the word, this being due to the peculiar nature of the laws relating to juveniles. Nevertheless, when a child absents himself from home without parental permission he is, in fact, guilty of unlawful activity. Thus, as noted above there is no problem with his arrest. The problem is whether his “offense” warrants his being arrested prior to any type of warrant having been obtained when he is observed taking refuge in the home of another. We hold that it does.
Although this is not strictly speaking, a case involving a search or seizure, the constitutional protections of the Fourth Amendment and Art. 1 Sec. 7 of Louisiana’s Constitution nevertheless come into play as the officers were required to make, without permission, an entrance into a private residence to effect the arrests. These provisions do not prohibit all intrusions into private homes, but only those which are unreasonable. As has been shown in the above cited Supreme Court decisions “reasonableness” in the case of suspected illegal activity is dependent upon probable cause as determined by an impartial magistrate. This is subject to the exception of “exigent circumstances,” in which case the requirement of a warrant is suspended.
These decisions also clearly indicate that the above stated constitutional protections were not designed to provide a “base” on which citizens can safely flaunt violations of the law in full view of officers of the peace. Thus, an immediate arrest in such a case is not unreasonable, and the fact that it is made in a private residence, and that there may have been time to obtain a warrant is of no consequence.
In addition to the inapplicability of a search warrant an arrest warrant was *856 equally unnecessary as well as inappropriate. Warrants of arrest, as the Supreme Court stated in Trupiano, supra, are designed to meet the dangers of unlimited and unreasonable arrests of persons who are not at the moment committing any crime. Even conceding arguendo, that being a runaway is not a “crime”, the reasons for this protection are obviously not present under these circumstances.
It has been suggested to this court that a distinction be drawn between a felony and a misdemeanor regarding the officer’s right to arrest for a violation of the latter committed in a private residence, but in the full view of an officer. As stated above, the Supreme Court has held in United States v. Di Re that state law determines the validity of arrests made without warrants. There is no question that Louisiana’s authorization under art. 213(1) of the Code of Criminal Procedure is sufficiently broad to sustain the arrest in this case,[2] and the only question is whether the Fourth Amendment to the Federal Constitution and Art. 1 § 7 of Louisiana’s Constitution render it illegal.
This is a novel issue and has not yet been answered by the courts. Without holding that any misdemeanor would justify such an intrusion, we hold that the arrest in this case, under these conditions violates neither the spirit nor the letter of these constitutional safeguards. Just as society has a valid interest in protecting itself frcxn dangerous felons it has an equally valid interest in the protection of its juveniles. We do not accept the argument that these children were “safe” in the home of a friend, particularly since there was no adult supervision at the time of the arrests. No child who has run away from his parent’s supervision and who has taken refuge with another juvenile in the latter’s home can be considered “safe”; that such action is fraught with danger is self-evident and requires no elaboration. To sustain our original holding reversing the adjudication of delinquency would defeat the purpose of laws designed for the protection of these juveniles, needlessly tie-ing the hands of police authorities in the process, and would pervert the very constitutional safeguards behind which they so righteously hide.
Appellant also contends that article 224 of the Code of Criminal Procedure requiring the peace officer to announce his authority and purpose before entering to make an arrest was not complied with. This argument is based on the failure of the officer to make any statements before walking into the home to make the arrest. We find this inconsequential since only a short while before, on their first visit to the residence, the officers had made clear their purpose and authority and going through the ritual of restating it was simply unnecessary. The requirement of article 224 had been satisfied.
For the foregoing reasons the original judgment of this Court, dated June 1, 1970, is vacated and the Juvenile Court’s adjudication of delinquency of Eloise Moten, Ramona Williams and Vanessa Lee Randall, releasing them to the custody of their parents is reinstated and affirmed.
Original judgment vacated, adjudication of delinquency of minors affirmed.

. Article 13:1570 provides in part that the court (referring to the Juvenile Court) shall have exclusive original jurisdiction concerning any child whose domicile is within the Parish, or who is found within the Parish, and who has absented himself from home or usual place of abode without the consent of his parents or other custodian. Art. 213 provides, also in part that an officer may arrest without a warrant a person who has committed an offense in his presence, providing further that if it is for a misdemeanor it must be made immediately or in close pursuit.

. The official Revision Comment under 213(1) states in part:
“Instead of the phrase ‘felony, or misdemeanor’ this article contains the term ‘offense’. Art. 933 defines ‘offense’ to include both felony and misdemeanor and ‘misdemeanor’ to include violation of ordinances.”