Edward L. Robinson, J.
On Monday, March 10, 1975, at approximately 10:30 a.m., Detective Donald C. Kieffer of the Amherst Police Department entered the Adult Book Store where the defendant is employed as a cashier. A sign on the front door of those premises stated that books and other materials which were sold within were sexually explicit. Detective Kieffer purchased a magazine at the store and left. He re-entered shortly thereafter in the company of other police officers and Honorable Sherwood Bestry, Amherst Town Justice. The defendant was placed under arrest pursuant to an arrest warrant previously issued. While the defendant was under arrest and behind the counter under the custody of a police officer, the court stenographer set up his equipment and Detective Kieffer began selecting magazines sealed in plastic-type material and handed the same to Town Justice Bestry for his inspection. If after looking at the front and back of said magazine, Justice Bestry felt there was need for further inspection, he would tear off the plastic material and look *130 inside the magazine. If he then felt the magazine was obscene, he would have the same marked as an exhibit. This procedure was conducted for some 55 magazines.
After completing the examination of 55 magazines selected by Detective Kieffer, Town Justice Bestry placed Detective Kieffer under oath to testify that he had purchased a magazine on March 3, 1975, and brought the same to Justice Bestry; that Justice Bestry had viewed the magazine and found reasonable cause to believe it was obscene, and issued an arrest warrant; Detective Kieffer also testified that he requested Justice Bestry to go with him to the book store to view various magazines offered for sale on the premises.
At completion of Detective Kieffer’s testimony, Justice Bestry made the following statement for the record.
the court: "Let the record show that I have examined the various magazines presented to me by Detective Kieffer on this date and I found reasonable cause to believe that 55 of said magazines to be obscene.
“I, therefore, authorized Detective Kieffer and Detective Czechowicz to seize said magazines.
"I do not believe that it is necessary under these circumstances to have an application for a Search Warrant prepared, nor do I believe it is necessary for me to issue a Search Warrant.
"I have already reviewed the material and I have made my determination as to reasonable cause and I find reasonable cause to believe that said magazines are obscene and therefore I am hereby authorizing a seizure of said magazines.
"This is an establishment open to the public and I entered said premises, resulting from said invitation to the public to enter.
"I am over 21 years of age.
"Okay. That will take care of the magazines. Do you have some other materials that you want me to examine?”
detective kieffer: "Yes. We would like you to view these films.”
the court: "Do you have anything for me to view them with?”
DETECTIVE KIEFFER: "Yes.”
the court: "Okay. Start. Is there an electrical outlet over here? It would be easier for Jerry to work over here.”
*131 At this point, Detective Kieffer started to select motion picture films contained in closed boxes with photographs on the exterior of each box purporting to exemplify the nature of its contents. These boxes were then given to Justice Bestry for his inspection. Detective Kieffer selected approximately 24 films in this fashion and Justice Bestry, after viewing the photographs on the front of each box then decided whether or not to look further. Some of the films then were viewed by Justice Bestry.
After completion of the procedure, Justice Bestry made the following statement for the record:
the court: "Okay, Ready? Based on the foregoing record and the explanation as to how I happened to be here, which explanation was made after my examination of the first 55 Exhibits which were magazines, and based on my finding that Exhibits Nos. 56 through and including 79, which were exhibits of movies, each of which I found reasonable cause to believe to be obscene, I am hereby directing that the Police Department of the Town of Amherst is hereby authorized to seize such exhibits.
"By virtue of the fact that I have examined same and have viewed same, I do not believe the Law requires me in an instance such as this to have prepared a formal written Search Warrant.
"My record is to be considered a Search and Seizure Warrant, which I will sign as soon as the same is typed.
"I am hereby, orally, authorizing the Police Department to seize each of said Exhibits.
"Naturally, the Police Officer in charge will leave an inventory of that which is seized.”
(Whereupon, at 3:00 p.m. the viewing and marking of exhibits was concluded.)
After completion of the entire search and seizure mission, the defendant was charged with the following.
The accusation in pertinent part, read as follows:
"Michael Krochta, knowing the content and the character, he possesses with intent to promote, any obscene material TO WIT: Said defendant did possess at 2783 Niagara Falls Blvd. in the Town of Amherst, fifty-five (55) books and twenty-four (24) films depicting obscene material consisting of various acts of cunnilingus, fellatio and sexual intercourse. Said books and films were displayed on shelves and in glass case in said store.
*132 "Said books and films had a total retail value of seven hundred thirty-four dollars and eighty cents ($734.80) as indicated on attached inventory lists.
"The above allegations of fact are made by the Complainant herein, upon direct knowledge and/or upon information and belief with the sources of his information and the grounds for his belief being his personal observation and the probable cause ruling by Town Justice Sherwood L. Bestry in his presence.”
The defendant claims that the procedure above outlined was unconstitutional, unlawful, contrary to statutory requirements and contrary to the accepted practice. The method used in the instant case is novel and I have been unable to find any case directly in point. The law is clear, however, that a prior judicial determination is necessary before a warrant can issue. This was done in the present case. While no search warrant was issued, the premises were open to all. The books and other material were in plain view and, under the circumstances, I believe that a search warrant was not required. Only such materials as appeared objectionable from their outside covers or boxes were examined. Justice Bestry, after examining these materials, made a determination that some of the materials violated the law.
The Fourth Amendment to the United States Constitution proscribes violation of persons’ security against unreasonable searches and seizures; not all searches and seizures are forbidden (Elkins v United States, 364 US 206, 222; Terry v Ohio, 392 US 1). The court holds that in the instant case there was no illegal search, but merely a seizure of items displayed to the public which was reasonable, proper, and judicially monitored. It has long and uniformly been held that Justices have the power to issue arrest warrants, after viewing pornographic material purchased by the police. Since this is so, it would seem to follow that Justices have the power to issue such arrest warrants after personally viewing the alleged pornographic material which was publicly displayed, and after determining that there is reason to believe that the material so viewed is pornographic and illegal.
In my opinion, there was no illegal search of the book store, as it consisted of premises open to the public, for which no individual may harbor a reasonable expectation of privacy and freedom from governmental intrusion: "What a person know *133 ingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.” (Katz v United States, 389 US 347, 351.) The testimony in the instant case establishes that the book store was a public place where all persons were implicitly invited to peruse materials on display. That police officers and a Town Justice responded to this general invitation cannot transform that which is ordinary and proper into an illegal search. This court, therefore, concludes that no warrant was necessary to validate the entry of the law enforcement officers and Justice Bestry into the premises.
What did occur on the premises was an examination of publicly displayed material by a Magistrate, and a seizure thereafter. While there was no "seizure warrant”, seizure gains its propriety from adherence to basic constitutional tenets, notwithstanding the absence of a written warrant.
The purpose of a search warrant is the interposition of a Magistrate between the citizen and the police (McDonald v United States, 335 US 451, 455-456). The protection of the Fourth Amendment lies not in a printed paper form, but in requiring the usual inferences which reasonable men draw from evidence to be drawn by a neutral Magistrate, as opposed to a police officer engaged in the often competitive enterprise of ferreting out crime (Johnson v United States, 333 US 10, 13-14; Coolidge v New Hampshire, 403 US 443). In the instant case, there was such an interposition of a Magistrate between citizen and police; inferences were drawn by a Magistrate, rather than by police officers.
The present case differs from those cited by the defendant’s counsel in that it was not necessary to break and enter in order to view the alleged objectional material; it was open to viewing by the public. While the circumstances of this case appear to be unique, this court holds that the determinative factor is not the existence or nonexistence of the search warrant, it is the existence or nonexistence of a prior judicial determination of obscenity. The opportunity for a Magistrate to "focus searchingly on the question of obscenity” was present and utilized in the instant case. There was a seizure, with the requisite judicial interposition between citizen and police, as is constitutionally approved. There was a determination, prior to any seizure of probable obscenity by a Magistrate, as is judicially required.
*134 I, therefore, hold that the procedure employed was proper and deny the defendant’s motion to suppress the evidence.