# STATE OF FLORIDA v. LABRADA, et al.

## Case No. 85-3289

Eleventh Judicial Circuit, Dade County

July 19, 1985

### APPEARANCES OF COUNSEL

**Juan Gonzalez,** Assistant State Attorney, for plaintiff.

**Edward Carhart** for defendant, Labrada.

**Norman Davis, Steel Hector & Davis,** for Corderi, King, O'Bradovich and WPLG-TV, Channel 10.

### OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

This cause duly came before the Court on the Motion to Quash Subpoenas Duces Tecum for Deposition, made in behalf of Victoria Corderi, Jeff King in Miami. The subpoenas were served by Defendants in this felony case seeking the testimony and television footage obtained by the TV reporters at the time the police were executing a search

warrant directed to alleged lottery and numbers paraphernalia. The Defendants have moved for enforcement of those subpoenas.

The subpoenas served upon the TV reporters ordered them to appear to give testimony at deposition and to bring with them "Any and all notes, memoranda, reports, records, photographs, and any other documents, etc. pertaining to the above case." During the course of the proceedings, the Defendants refined their position as to the items requested and the Court will deal with those items as redefined.

### The Proceedings to Date

The Defendants in this case were charged by way of a felony Information in three (3) Counts which allege unlawfully, feloniously and knowingly aiding or assisting in the setting up and conducting of lotteries including the use and possession of lottery tickets and other paraphernalia. The Defendants have taken numerous depositions of police officers engaged in the lottery surveillance or in the execution of the search warrant. Those depositions were taken prior to the serving of those subpoenas here at issue.

The Defendants raise a defense to the Information that the items seized and the statements obtained in the home of Defendant Camejo at the time the search warrant was executed, were illegally obtained in violation of the rights of the Defendants guaranteed to them by the Constitution of the United States and by the Constitution of the State of Florida. More specifically, the Defendants contend that the police made an unlawful forcible entry into their residence by the use of a sledgehammer, and the items seized are being used as evidence against the Defendants.

### The Facts

The facts to which there is no substantial disagreement are as contained in the papers before the Court on these Motions, are from the file of this cause, and from the oral arguments of counsel in Open Court.

The facts here are somewhat unique. The TV reporters accompanied or met the police just prior to the execution of the search warrant against a private dwelling. This meeting was at the previous specific request of the TV station; and, therefore, the TV reporters were able to witness, observe, and film the actual events of the "raid" as they occurred, commencing from the positioning of the police, to the execution of the warrant at the door of the dwelling, to the interrogation of Defendants or witnesses at the scene.

Apparently Metro Dade Police officers conducted surveillance of the

112

Defendants for at least nine (9) months prior to the arrests being made. The TV reporters played no role in that surveillance. In late 1984, representatives of the TV station asked the Metro Dade Police Department for permission to accompany police on raids for the purpose of producing a television series on criminal activity among Hispanic citizens.

For several weeks prior to this raid, TV reporter Corderi conducted research for a special five-part news series which examined the role of Hispanics in wide-ranging aspects of organized crime in South Florida and elsewhere in the United States. The series, entitled "Los Criminales: The New Mob," was broadcast on the TV station's news program during March, 1985. One episode of the multi-part series reported on illegal lotteries and sports betting in South Florida.

On February 5, 1985, Metro Dade Police obtained a search warrant for the residence of the Defendant Camejo in Dade County, Florida. The police, pursuant to the previous request of the TV station, invited the TV reporters to meet them for the execution of the search warrant at the Camejo residence, which address the police apparently gave to the TV reporters. The police then met with the TV reporters in the vicinity of the Camejo house. The TV reporters were permitted to surveil and possibly film Camejo's house from a position within a police surveillance van parked nearby although the latter statement may be in dispute.

As the police prepared to execute the warrant on the Camejo house, the TV reporters were permitted to accompany members of the lottery squad and S.W.A.T. team members as they approached the residence. Apparently, the TV reporters were able to begin filming the events before an entry of Defendant Camejo's home was effected by the police through the use of a sledgehammer on the front door.

Information and photographs gathered by the TV reporters during the police operations on February 5 were included in a TV episode to supplement other material. Videotape copies of those episodes in the series which contained photographs taken at the time of the raid operation here relevant have been previously furnished to the subpoenaing parties.

### The Issue

At issue here is whether the "outtakes," i.e., those portions of the film clips not used or exhibited to the public should be required to be produced by the TV reporters to the Defendants for use in defense of the felony charges against them, more specifically, to the defense of an alleged unlawful forcible entry into Defendant Camejo's residence.

113

## The Law

The parties appear to agree on the status of the applicable law, but disagree as to whether the requisite showing has been made by the Defendants to overcome the qualified privilege of freedom of the press which exists as to reporters.

This case is not one which deals with confidential informants or sources. Constitutional rights to reporters of freedom of the press conferred by the First Amendment, and those rights guaranteed to all persons under the Fourth, Fifth, Sixth and Fourteenth Amendments.

The Motions now before the Court focus on the ability of an accused to defend himself against criminal felony charges by obtaining from TV reporters existing information which was made available to them *solely* as a result of a search warrant *issued to the police* directed to a private dwelling, which information would not otherwise have been available to the TV reporters.

The Court refers to *United States v. Criden*, 663 F.2d 346 (CA3 1980) which highlights the type of situation now before this court:

"[I]n Riley v. City of Chester, 612 F.2d 708 (3d Cir. 1979) a civil case, we emphasized that special circumstances exist in a criminal case that must be considered in evaluating a witness' claim of journalists' privilege. Specifically, the trial court must consider whether the reporter is alleged to possess evidence relevant to the criminal proceeding and the effect of disclosure on two important constitutionally based concerns: the journalist's privilege not to disclose confidential sources and the constitutional right of a criminal defendant to every reasonable opportunity to develop and uncover exculpatory information 612 F.2d at 716." (at p. 348)

. . . . . . . . . . . .

"We must emphasize at the outset that this case does not implicate only the first amendment. Rather, it highlights a tension between the first amendment and the fifth and sixth amendments. The first amendment states: "Congress shall make no law . . . abridging the freedom of speech, or of the press." The sixth amendment requires that in all criminal prosecutions, the accused shall have compulsory process for obtaining witnesses, and the fifth amendment guarantees that he shall not be deprived of life, liberty, or property without due process of law. The tension has been described as a balance between the "freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct." Branzburg v. Hayes, 408 U.S. 665, 710, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972) (Powell, J., concurring).

**114**

The law of Florida is set forth in *Tribune Co. v. Green*, 440 So.2d 484 (Fla. 2d DCA 1983). There, as a means of striking this balance in criminal cases, that Court adopted a three part test in determining whether a reporter should testify or give information as to his observations:

(1) the information must be relevant to the criminal charges, and

(2) it must not be obtainable from alternative sources, and

(3) the need for the information must be compelling.

## Discussion

For approximately the past two hundred years, the privileges, rights, and guarantees accorded a reporter of freedom of the press to report to the public, news and events have been sacred and should remain so. Without that freedom, this country and its citizens would not long remain free. This Court recognizes and adheres in every way to those Constitutional guarantees of freedom of the press, and this ruling should not, will not, and is not intended to make the slightest intrusion on the Constitutional, statutory and judicial rights accorded to reporters in the performance of their historic profession. But, are we here dealing with "reporting" or with "creative" journalism, which by its very nature requires the reporter to cast himself into another role or into another environment where the privileges, rights and guarantees of others are equally protected by the Constitution?

Section 933.04, Florida Statutes, relating to search warrants confirms the right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizure and searches, except by a properly issued search warrant. See also Section 933.18, Florida Statutes.

By the facts in this case, have the TV reporters voluntarily given up, waived or relinquished some portion of the privileges, rights and guarantees accorded to a reporter in order to balance a defendant's right to defend against criminal felony charges with information obtained solely during the execution of a search warrant issued to police and directed to a private dwelling?

The Defendants have raised a *bona fide* defense to the criminal charges against them: namely, that the search warrant was unlawfully executed by a forcible entry by the police into one Defendant's home by the use of a sledgehammer on the front door. From the facts before the Court, it appears that the police conduct is reflected on the "outtakes" which the TV reporters decline to produce. We ask, how is

**115**

it that the reporters were present at just that moment of entry? And the response from the facts here is that the TV reporters invited themselves to be with the police, or the police invited them to be there. The TV reporters voluntarily sought to identify themselves with this particular police activity. Certainly Chapter 933, Florida Statutes, gives a reporter no greater standing to be present at the execution of a search warrant than it gives to law enforcement officers. Section 933.07-.08, Florida Statutes. When an invitee or a "visitor" voluntarily steps into the role of an observer to specific police action affecting the rights of others, that person understands or he assumes a risk that he is relinquishing or waiving some of his rights in his new role and that he may be held accountable for that which he observes.

Search warrants are directed *only* to law enforcement officers, Section 933.07, Florida Statutes. If those police officers had caused films or photographs to be taken of the events, or statements of conversations with the Defendants or other witnesses, the law clearly provides that that material is obtainable by an accused to defend himself. *Brady v. State of Maryland,* 373 U.S. 89 (1963) and the legion of cases requiring the State to provide "Brady" material. See also Rule 3.220(a) Fla.R.Cr.P. which requires the prosecutor to turn over to the Defendant, statements, objects, papers and other relevant information disclosing or advising of sensitive materials, electronic surveillance, and a host of other items. The *Brady* case and its progeny are to the following effect:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." (at p. 1196-1197)

. . . . . . . . . . .

"Society wins not only when the guilty are convicted but when criminal trials are fair; our system of administration of justice suffers when any accused is treated unfairly." (at p. 1197)

The TV station and reporters contend that the same material or evidence now sought can be obtained from alternative sources in this case primarily from policemen who were part of or who actually conducted the raid as part of their job. At this time, it is not for this Court to determine the credibility of witnesses to an event, but for the jury to so decide. Nor is it for this Court to manage or determine the method by which an attorney should present his case or the manner in which the attorney may use the information obtained to protect or defend the accused. Witnesses including law enforcement officers, are like other human beings who have views, foibles, influences and

employments built up over a lifetime. And that was recognized by the Supreme Court in a classic statement of the policy underlying the warrant requirement of the Fourth Amendment in *Johnson v. United States*, 333 U.S. 10, 13-14:

> "Its [The Fourth Amendment] protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's home secure only in the discretion of police officers . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

The TV reporters under the facts and circumstances of this case should be held to the same standard. During the execution of a search warrant, a "visitor" is not insulated from testifying as to those facts which he observed in the role he voluntarily assumed. And, this is confirmed by Section 933.08, Florida Statutes, that a search warrant shall in all cases be served by police officers and "by no other person except in aid of the officer requiring it, said office being present and acting in its execution."

Based on the facts in this case, some of the information sought by the subpoenas directed to the TV reporters is relevant to the criminal charges against the Defendants in this case; the information sought is not obtainable from alternative sources or from sources where credibility would not be required on the part of the jury; and the need for the information is compelling to the enforcement or protection of Defendants' rights in this case.

### Ruling

Accordingly, based on the facts and the law in this case, the Court grants in part, and denies in part, the subject Motions insofar as they relate to the subpoenas duces tecum served upon the TV reporters:

(1) The names or identities of any and all informants or sources need not be produced or testified about on deposition, including as to law enforcement officers;

(2) Any and all notes, memoranda, reports and records pertaining to the above case, except as directed below need not be produced on deposition;

**117**

(3) All "outtakes" relating to the police entering upon the walkway, lawn or curtilage of the Camejo dwelling place as well as in the Camejo house, shall be produced at deposition; and

(4) All relevant testimony relating to those "outtakes" as well as to that film and commentary shown to the public and to any scenes portrayed or photographs exhibited therein may be sought and taken on deposition.