318 So.2d 190 (1975)
Daryl Lynn SAMUELS, Appellant,
v.
STATE of Florida, Appellee.
No. 74-1433.
District Court of Appeal of Florida, Second District.
July 18, 1975.
Rehearings Denied August 25, 1975.
*191 James A. Gardner, Public Defender, Sarasota, Harold H. Moore and Richard J. Cole, II, Asst. Public Defenders, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
Appellant pled nolo contendere to a charge of possession of phencyclidine, a controlled substance; reserving, however, the right to appeal the trial court's denial of his motion to suppress. The trial court withheld adjudication of guilt and placed appellant on probation for two years.
Appellant alleges the court erred in denying his motion to suppress by finding that he had consented to the search of his automobile from which the contraband was seized.
From the testimony on the motion it appears that at approximately 11:00 p.m. on November 8, 1974, Patrolman Burnett of the Lake Wales Police Department received information from an informant whom he later learned had given other officers reliable information in the past. The informant stated that at a certain recreation center on Highway 60 East, he had seen some THC in an orange Roadrunner automobile driven by a fair young man with glasses. Burnett stated the informant did not indicate how much earlier that evening he had seen the contraband nor could the informant state if the drugs were still in the car. Patrolman Burnett radioed this information to Detective Helms, who in turn relayed it to Lt. Busbee. When finally given the name of the informer, Lt. Busbee recognized the name as that of a reliable informant.
At about midnight, Patrolman Burnett, who was in a patrol car with another officer, saw a Roadrunner automobile matching the informant's description which appeared to be coming from the place mentioned by the informant. The driver also fit the description furnished the officer. *192 He stopped the car, although it had been exceeding the speed limit by only 5 miles per hour. Patrolman Burnett acknowledged he stopped the car because of the information about contraband and not for the offense of speeding. A conversation ensued between Patrolman Burnett and the appellant, who was driving the Roadrunner. About that time another patrol car arrived with Detective Helms, Lt. Busbee, and another officer. Lt. Busbee had a conversation with appellant, searched the car, and in the glove compartment found a small plastic bag of pills which as it turned out were phencyclidine. As to the critical issue of consent, the testimony varied as to the conversation between the police officers and the appellant.
Patrolman Burnett testified: The appellant originally refused to consent to a search of his car. Then he told appellant that the police had a right to search the car under the "stop and frisk" law. Appellant replied that a warrant was necessary. Then the other police arrived. Lt. Busbee advised appellant of his Miranda rights and then asked appellant three times whether he could search the car, and each time the appellant said "yes." Patrolman Burnett further testified that appellant asked Lt. Busbee what he would do if he did not consent and Busbee replied he would search anyway. During this conversation, Lt. Busbee also told appellant that he had the right to refuse consent.
Lt. Busbee testified: He told appellant that he had the right to deny permission to search. The appellant said he knew that, but three times gave permission to search. While Lt. Busbee searched the trunk, appellant asked what the police would have done if he had refused permission to search. Lt. Busbee discounted this as joking or small talk.
Appellant testified: He denied permission to Patrolman Burnett and requested a warrant. Patrolman Burnett replied that no warrant was necessary. Then Lt. Busbee arrived and asked, only once, for permission to search. Appellant replied, "What if I were to refuse?" Lt. Busbee replied, "We'd search  probably search it anyway." At that point appellant allowed the search.
Where the question of consent to the search of a vehicle arises, the trial court must follow the standard of requiring the evidence to be clear and convincing before it can find consent. Sagonias v. State, Fla. 1956, 89 So.2d 252. While ordinarily an appellate court should not substitute its judgment for that of the trial court where there is evidence to support the trial court's determination, when the question of consent is raised on appeal, it is essential for this court to determine that the evidence was clear and convincing. This role of the appellate court was recently emphasized in Bailey v. State, Fla. 1975, 319 So.2d 22.
This court in Talavera v. State, Fla. App.2d 1966, 186 So.2d 811 at 814, stated:
A distinction is recognized ... between submission to the apparent authority of an officer and unqualified consent. Mere acquiescence in a search is not necessarily a waiver of a valid search warrant. Rather, for an occupant to waive his rights, it must clearly appear that he voluntarily permitted or expressly invited and agreed to the search, being cognizant of his rights in the premises.
Although recognizing the evidence presented on the issue of consent was "borderline", the trial court denied the motion to suppress holding that "... Mr. Samuels ... was in complete control of knowing what he was doing and that he wasn't the slightest bit coerced."
From the totality of the circumstances, we find the evidence is not clear *193 and convincing that appellant consented to a warrantless search. It was undisputed that the appellant initially denied the one officer any permission to search and even contested that officer's claim of legal authority to search under the "stop and frisk" law. While there is conflicting testimony as to subsequent developments, strong circumstances appear that any subsequent consent may have merely been a submission to the lawful authority after additional police officers were on the scene. Then too, the state's case is not bolstered by the evidence that the police told the appellant they probably would search even without his consent.
Another aspect of the case is of vital significance: Whether there was probable cause, i.e., whether the officers who seized the contraband from the appellant's vehicle did so on a belief reasonably arising out of circumstances known to them that such vehicle contained contraband. Although there is evidence to the effect that this was the case, "probable cause" is a matter for initial determination by the trial court.
Fla. Stat. § 933.19 adopts the rule formulated in Carroll v. U.S., 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, which permits a warrantless search of a motor vehicle on the open highway where there is probable cause to believe the vehicle contains contraband. Of course, where, as here, probable cause is based on a tip by an informant, it is also necessary that the court make factual findings with respect to the reliability of informant and the credibility of his information. Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. U.S., 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and State v. Lee, Fla.App.2d 1975, 313 So.2d 441.
Accordingly, the case is reversed as to the trial court's finding that the appellant consented to the search and seizure, but remanded for determination as to whether there was probable cause for search of the appellant's vehicle and a seizure of contraband.
Reversed and remanded.
HOBSON, A.C.J., and GRIMES, J., concur.