OPINION
On June 15, 2001, the Licking County Grand Jury indicted appellant, Damian Shaw, on one count of possession of drug paraphernalia and one count of possession of marijuana.
On August 28, 2001, appellant filed a motion to suppress, claiming an illegal search and seizure. A hearing was held on October 9, 2001. By judgment entry filed October 17, 2001, the trial court denied said motion.
On December 12, 2001, appellant pled no contest to the charges. The trial court found appellant guilty. By judgment entry filed February 1, 2002, the trial court sentenced appellant to an aggregate term of thirty days in jail, all suspended, and five years of community control.
Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I "THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE MOTION TO SUPPRESS FILED BY THE DEFENDANT-APPELLANT."
 I
Appellant claims the trial court erred in denying his motion to suppress. We disagree.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are again the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19;State v. Klein (1991), 73 Ohio App.3d 485; State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93; State v. Claytor (1993),85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
Specifically, appellant claims the investigating officer "lacked a constitutionally sufficient basis to effectuate the initial seizure of his person and lacked a further basis to expand the initial investigation into a search for evidence of drug usage." Appellant's Brief at 7. Because appellant challenges not only the initial stop but the continued investigation, we will address each issue separately.
 INITIAL STOP
On June 2, 2001, Lieutenant Frank Fernandez of the Pataskala Police Department was dispatched at 4:00 a.m. to "145 Village Gate Apartments to investigate a complaint of possible juveniles breaking into vehicles." T. at 6. The complaint to the police department was made by persons who identified themselves. Id. The juveniles were identified as being four in number who were seen tampering with a vehicle. T. at 7. Because of previous incidents, Lieutenant Fernandez conducted a foot patrol of the complex. Id. While walking around, Lieutenant Fernandez noticed a black male approach a vehicle and jiggle the rear driver's side door. Id. The individual was unable to open the door so he went around to the other side. Id. Lieutenant Fernandez approached the individual, identified himself and asked him "what he was doing there." Id. As Lieutenant Fernandez approached the vehicle, he noticed a "fresh packet of marijuana" and a driver behind the wheel of the car. T. at 8. The driver of the vehicle was appellant who identified himself and told Lieutenant Fernandez "they were just dropping a friend there" at the complex. T. at 8.
The question is whether these facts are sufficient to permit Lieutenant Fernandez to approach and question appellant. We answer in the affirmative.
In Terry v. Ohio (1968), 392 U.S. 1, and its progeny, it has never been contested that casual police encounters with citizens violate theFourth Amendment to the United States Constitution. In Terry at 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
The facts presented prior to the encounter with appellant included 1) an identified call reporting juveniles possibly breaking into vehicles, 2) previous incidents at the same complex, 3) the time was 4:00 a.m. and 4) appellant's passenger appeared to be jiggling the rear driver's side door. We find these facts, when taken together, clearly give rise to a reasonable suspicion of criminal activity. The fact that the "tipsters" were not anonymous and there had been previous incidents at the complex gives greater credence to Lieutenant Fernandez's belief of possible criminal activity.
We acknowledge the police did not verify the tipsters until after the stop (T. at 12-13), however, we do not find this to be fatal to Lieutenant Fernandez's right to approach appellant. Apart from the tip, Lieutenant Fernandez actually observed suspicious activity (jiggling the door of a vehicle) and had knowledge of previous criminal incidents in the area.
Upon review, we find Officer Fernandez had articulable facts that would lead to a reasonable suspicion of criminal activity. Therefore, the original encounter did not violate the Fourth Amendment to the U.S. Constitution.
 CONTINUED INVESTIGATION
Appellant argues if reasonable suspicion is found, there is insufficient evidence to support his continued investigation. We note if reasonable suspicion is elevated to probable cause, an investigation may continue.
In State v. Moore, 90 Ohio St.3d 47, 49, 2000-Ohio-10, the Supreme Court of Ohio reviewed a case involving probable cause to search an individual's person and automobile based solely upon a strong odor of marijuana coming from the individual's automobile and person. The Moore
court defined probable cause as follows:
 "To further detain the defendant and to conduct a search, Sergeant Greene needed probable cause, a term that has been defined as "`a reasonable ground for belief of guilt.'" Carroll v. United States (1925), 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555. Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate. State v. Welch (1985), 18 Ohio St.3d 88, 92, 18 OBR 124, 127, 480 N.E.2d 384, 387. The United States Supreme Court has long acknowledged that odors may be persuasive evidence to justify the issuance of a search warrant. Johnson v. United States (1948), 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440
(odor of burning opium from a hotel room gave officers probable cause to obtain a search warrant); Taylor v. United States (1932), 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (distinctive odor of alcohol is an objective fact indicative of a possible crime). So long as the person is qualified to know and identify the odor and it is a distinctive odor that undoubtedly identifies a forbidden substance, this constitutes a sufficient basis to justify the issuance of a search warrant. Johnson, 333 U.S. at 13, 68 S.Ct. at 369, 92 L.Ed. at 440."
After reviewing the facts, the Moore court held at syllabus "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search."
Lieutenant Fernandez testified that as he approached the driver's side of the vehicle, the window was rolled half way down and he could smell "burnt marijuana." T. at 8. At that point, Lieutenant Fernandez asked appellant to exit the vehicle because of what he smelled. T. at 9. Officer Fernandez was trained in the detection of the odor of marijuana, raw and burnt. T. at 21-22.
Lieutenant Fernandez waited for back-up to arrive before searching appellant. T. at 10. While waiting, appellant told Lieutenant Fernandez no narcotics were in the vehicle, but "I might have a bag of marijuana on me." T. at 10. Appellant and his passengers had a strong odor of marijuana on their persons. Id. After back-up arrived, appellant was searched and a bag containing what appeared to be crack cocaine was found. T. at 11. A field test determined the substance was indeed cocaine and appellant was arrested. T. at 11-12.
Appellant argues the Moore court only sanctioned the "plain smell" doctrine as it relates to fresh burnt marijuana. We disagree. The syllabus clearly states "the smell of marijuana, alone" as does the dicta at 54. Lieutenant Fernandez testified to smelling "burnt marijuana" coupled with his observation of "a fresh packet of marijuana" in the vehicle. T. at 8, 9. Here we have not only the "plain smell" doctrine, but an observation of fresh marijuana under the "plain view" doctrine. We find these two observations are sufficient to warrant the search of appellant and his vehicle.
Upon review, we find the trial court did not err in denying appellant's motion to suppress.
The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
By FARMER, J. HOFFMAN, P.J. and BOGGINS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.