**UNITED STATES of America, Plaintiff,**

v.

**Raymond LOY, Defendant.**

**Civil Action No. 5:07CR38.**

United States District Court, N.D. West Virginia.

July 23, 2008.

David J. Perri, U.S. Attorney's Office, Wheeling, WV, for Plaintiff.

Brendan S. Leary, Federal Public Defender Office, Wheeling, WV, for Defendant.

### MEMORANDUM OPINION AND ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

FREDERICK P. STAMP, JR., District Judge.

#### I. *Procedural History*

On November 14, 2007, the defendant, Raymond Loy, was named in an indict-

ment charging him with twenty counts of production of child pornography in violation of 18 U.S.C. § 2251(a),(e). Thereafter, the defendant filed a motion to suppress evidence, including photos, computer discs and videotapes, seized by officers during the May 19, 2007 search of his residence. The government filed a response in opposition. United States Magistrate Judge James E. Seibert conducted an evidentiary hearing on the matter, and, on April 21, 2008, entered a report recommending that the defendant's motion to suppress evidence be denied. The defendant filed objections to the report and recommendation (including later-filed supplemental objections which this court will, under the circumstances, treat as timely). The United States filed a response to the defendant's objections.

## II. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See Webb v. Califano, 468 F.Supp. 825 (E.D.Cal.1979). Because the defendant has filed objections, this Court undertakes a de novo review of the report and recommendation.

## III. Facts

In May 2007, Tina Long, a clerk at the M & B Market in Weirton, West Virginia, approached Detective Grishkevich of the Weirton Police Department. Tina told Detective Grishkevich that her daughter danced at a strip club located in private residence and asked whether it was lawful to operate a strip club in a private residence. The detective said that he wasn't sure and would need to speak with her

daughter, Heather Long, to get further information.

On May 18, 2007 at approximately 7:00 p.m., Heather Long arrived at the Weirton police station to voluntarily speak with Detective Grishkevich and Detective Alexander about the matter. In her statements to the detectives, Ms. Long described the operation of a strip club at a private residence and her involvement as a dancer. Ms. Long also stated that minors were involved and that the operator of the strip club may be a registered sex offender. She described the residence where the alleged strip club was operated and the location where she and others parked to enter the residence. After the detectives finished interviewing Ms. Long, Detective Alexander and Lieutenant Shreiner attempted to locate the residence described by Ms. Long but were unable to do so. They returned to the police station and picked up Ms. Long so she could point out the residence. Ms. Long identified the residence at 111 Sellitti Lane as the site of the alleged strip club. Ms. Long's previous description of the residence and parking area matched the description of 111 Sellitti Lane and its accompanying parking area.

At approximately 10:30 p.m., Detective Alexander called Detective Grishkevich and informed him that Ms. Long had identified the residence at 111 Sellitti Lane as the site of the alleged strip club. Detective Grishkevich began drafting a search warrant application, including an affidavit establishing probable cause for the search of the residence located at 111 Sellitti Lane. He called Magistrate Hicks and informed him of the pending search warrant application. At approximately 11:00 p.m., Ms. Long, Detective Alexander, and Lieutenant Shreiner returned to the station. Ms. Long provided another statement about activities that had taken place at the alleged strip club. Detective Alexander

wrote a summary of her statement and asked Ms. Long to verify the accuracy of the written statement. Ms. Long affirmed it was accurate, and Ms. Long, Detective Alexander, and Lieutenant Shreiner signed their names at the bottom of the statement. After continued discussions with Ms. Long, Detective Alexander wrote an addition to Ms. Long's statement. After Ms. Long affirmed the accuracy of the supplemental statement, Ms. Long, Detective Alexander, and Lieutenant Shreiner signed their names under the addition. Ms. Long was next shown a photo of defendant and positively identified him as the operator of the strip club. Then, Ms. Long left the police station.

Following Ms. Long's departure, Magistrate Hicks arrived at the police station. Because the County offices for Hancock County are located in New Cumberland, a considerable distance north of Weirton, and because each of the Hancock County magistrates live in Weirton, it is common practice for magistrates to consider after-hours search warrant applications at the Weirton Police Department. In this instance, Detectives Alexander and Grishkevich briefed Magistrate Hicks on their investigation, presented the magistrate with evidence that the defendant was a convicted and registered sex offender and discussed with the magistrate the search warrant application. Magistrate Hicks asked whether Ms. Long was credible. Detective Grishkevich said he had never worked with Ms. Long and therefore could not prove her reliability or credibility. Magistrate Hicks requested Ms. Long's statement be attached to the search warrant application.

Detective Grishkevich attached Ms. Long's statement to the search warrant application and labeled the statement, "Attachment # 3." He then completed the search warrant application. The complet-ed search warrant application consisted of six pages. The first page was titled "Affidavit and Complaint for Search warrant" and identified the property to be seized as "See Attachment # 1"; described the premises to be searched as "See Attachment # 2;" and identified Attachment # 3 as the facts in support of the affiant's belief. The second page consisted of the search warrant. The third page was titled, "Attachment # 1." The fourth page was titled, "Attachment # 2." The fifth and sixth page comprised "Attachment # 3." Detective Grishkevich prepared an officer affidavit, but the affidavit was not attached to the search warrant application. Magistrate Hicks reviewed the search warrant application and suggested that certain amendments be made to "Attachment 2," which detailed the items to be seized. Magistrate Hicks then asked Detective Alexander to raise his right hand and state whether he swore or affirmed that everything presented in the search warrant application was true and accurate to the best of his knowledge and belief. Detective Alexander responded that he so swore and Magistrate Hicks signed the search warrant. At approximately 1:30 a.m. on May 19, 2007, the search warrant was executed. The defendant was found inside the residence. Among other items, officers seized numerous photos, VHS tapes, computer equipment, compact discs, floppy disks, and a secret videotaping system. The VHS tapes contained footage of several underage girls at the residence in various stages of undress.

### IV. *Discussion*

#### A. *Validity of the Search Warrant*

The defendant contends in his motion to suppress that video, photo, and computer evidence seized during a search of his residence must be excluded from the evidence at trial because police officers entered the residence with a constitutionally defective

search warrant. Following a hearing on the defendant's motion to suppress, Magistrate Judge Seibert recommends that the defendant's motion to suppress be denied because the arrest warrant was sufficient to protect the defendant's Fourth Amendment rights. This Court agrees.

The Fourth Amendment to the United States Constitution requires that warrants be issued by a neutral and detached magistrate, contain a particular description of the place to be searched and the persons or things to be seized, and be based "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV; *see Dalia v. United States*, 441 U.S. 238, 255, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979). Defendant Loy does not dispute that the warrant contained a sufficiently detailed description of his home or of the items to be seized. Rather, the defendant contends that the search warrant obtained by the officers in this case failed to meet the first and third of the above constitutional requirements. Specifically, the defendant argues in his motion to suppress that the search warrant was defective because (1) Detective Robert Alexander's application for the warrant did not include a sworn affidavit, (2) Magistrate Hicks was not neutral and detached, (3) the testimony of informant, Heather Long, was not corroborated, and (4) the information contained in the search warrant application did not support a finding of probable cause. These arguments will be addressed in turn.

1. *The Absence of an Affidavit in the Search Warrant Application*

The defendant appears to concede in his objections to the report and recommendation that the absence of an affidavit is not fatal to the validity of a search warrant in cases where, as here, the federal government subsumes prosecution of a defendant from the state. Nonetheless, the defendant states that, in making this concession, he does not waive his objections to the validity of the search warrant with regard to the absence of a properly executed affidavit.

■ The plain language of the Fourth Amendment requires simply that an application for a warrant be "supported by Oath or affirmation." U.S. Const. amend. IV. In this case, Detective Alexander affirmed under oath to Magistrate Hicks that the information presented in the application for the search warrant was true based upon his knowledge and belief. Therefore, this Court finds, following a *de novo* review, that the search warrant complied with the constitutional "Oath or affirmation" requirement.

2. *Neutral and Detached Magistrate*

The defendant next argues that Magistrate Hicks abandoned his role as a neutral and detached judicial officer when he issued the search warrant. In support of his argument, the defendant asserts that it was inappropriate for Magistrate Hicks to appear at the same police station where he formerly worked as Chief of Police, to direct the officers to attach the informant's statement to the warrant application and to direct the officers to include certain items in Attachment 2 to the warrant application. After receiving testimony regarding the circumstances surrounding the issuance of the warrant, Magistrate Judge Seibert found that Magistrate Hicks acted in a manner that was both neutral and detached. This Court agrees.

■ One of the protections provided by the Fourth Amendment is that inferences regarding probable cause must be "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct.

367, 92 L.Ed. 436 (1948). A magistrate is not permitted to serve as a "rubber stamp" for the police. *See United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

█ The conduct of Magistrate Hicks in this case does not tend to show that he failed to be "neutral and detached." Although Magistrate Hicks was the former Chief of Police at the Weirton Police Department, there is no evidence that he was improperly influenced by the detectives at the department or that he improperly influenced the detectives. Magistrate Hicks was not involved in the investigation of the defendant or the execution of the warrant. There is no evidence that Magistrate Hicks had direct contact with the informant or that he had any involvement in drafting the informant's statement which was ultimately attached to the search warrant application. Moreover, Magistrate Hicks's after-hours appearance at the police station for the purpose of receiving the search warrant application was not extraordinary conduct that would indicate a lack of neutrality. Indeed, it is common practice for the magistrates in Hancock County to receive warrant applications at the Weirton Police Department because the station is more conveniently located than the magistrate offices. Finally, Magistrate Hicks's suggestion to the officers that the informant's statement be attached and that certain information be included in an attachment to the search warrant application is not inconsistent with the magistrate's duty of neutrality. Rather, as Magistrate Hicks testified in the hearing before Magistrate Judge Seibert, it is a magistrate's responsibility to identify any deficiencies in a warrant application. Thus, in calling the officers' attention to potential deficiencies in the search warrant application, Magistrate Hicks did not breach his duty of neutrality.

The defendant objects to Magistrate Judge Seibert's finding that Magistrate Hicks acted as a neutral and detached magistrate. In his objections, the defendant simply renews and incorporates by reference the same arguments advanced in his motion to suppress. Having considered those arguments *de novo* and Magistrate Judge Seibert's findings as to the issue of neutrality, this Court finds that the defendant's objections are without merit.

### 3. *Credibility of Informant*

The defendant's primary objection to the report and recommendation is to Magistrate Judge Seibert's conclusion that the facts and circumstances surrounding the presentation of the search warrant application provided a basis for belief that the informant witness was reliable and credible. The defendant argues that the search warrant was invalid because Heather Long's statement was uncorroborated and unreliable. The defendant challenges eight specific conclusions reached by Magistrate Judge Seibert in support of his finding that Heather Long's statement was reliable. Specifically, the defendant argues that (1) Ms. Long's mother, rather than Ms. Long herself, initiated contact with the police, (2) Ms. Long's legal trouble was not disclosed to Magistrate Hicks and therefore Magistrate Hicks did not have an opportunity to inquire if Ms. Long's statement was the result of a *quid pro quo* arrangement, (3) Ms. Long's provision of her name, address, birth date, social security number and telephone number did not render her "unquestionably honest," (4) Magistrate Hicks did not have an opportunity to observe Ms. Long's demeanor, (5) Magistrate Hicks was not advised that the officers did not observe an ongoing party at the defendant's residence on the night the warrant was issued, (6)

Ms. Long' s affirmation of her own credibility was a meaningless gesture, (7) the officers' corroboration of Ms. Long's belief that the defendant was a registered sex offender is not meaningful, and (8) the officers' corroboration of Ms. Long's description of the defendant's residence and associated parking area is not meaningful.

■ Following a *de novo* review of the report and recommendation and the defendant's objections and supplemental objections thereto, this Court finds that Heather Long was a sufficiently credible witness to support a finding of probable cause to issue a search warrant. Probable cause can be founded on information received from an informant if, in view of the totality of the circumstances, the judicial officer is satisfied with the veracity and basis of knowledge of the informant. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). An informant's reliability may be bolstered by "[t]he degree to which [the] informant's story is corroborated." *United States v. Hodge,* 354 F.3d 305, 309 (4th Cir.2004). Nonetheless, " 'there is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible.' " *United States v. Perez,* 393 F.3d 457, 462 (4th Cir.2004)(citing *United States v. DeQuasie,* 373 F.3d 509, 518 (4th Cir.2004)). "The officer applying for the warrant 'need not. entirely eliminate the risk that an informant is lying or in error.' " *Id.* (citing *United States v. Capozzi,* 347 F.3d 327, 333 (1st Cir.2003)).

■ Heather Long's statement regarding the defendant's activities had sufficient indicia of reliability to support the issuance of a search warrant in this case. The

defendant's piecemeal objections to the individual conclusions of Magistrate Judge Seibert regarding the credibility of Ms. Long, when viewed in the totality of circumstances, fail to convince this Court that her statement was so lacking in credibility as to prevent a finding of probable cause.

First, any contradiction in the testimony before Magistrate Judge Seibert as to who first initiated the questioning of Heather Long is not fatal to the credibility of her statement. Regardless of whether Ms. Long's mother or Detective Grishkevich first initiated the inquiry into Ms. Long's knowledge about ongoing activities at the defendant's residence, Ms. Long freely submitted to a face-to-face interview with the officers involved in this case and the officers determined her statements and demeanor to be credible. Second, there is no evidence to support the defendant's suggestion that the officers promised Ms. Long some form of *quid pro quo* for her statement against the defendant with regard to certain criminal charges that were pending against her at the time.[1] Third, Magistrate Judge Seibert does not conclude in his report and recommendation that Ms. Long's disclosure of her identifying and contact information to the police rendered her "unquestionably honest." Rather, Magistrate Seibert simply concluded that the fact of disclosure supported a credibility determination.

Fourth, although Magistrate Hicks did not meet Ms. Long and did not have an opportunity to personally evaluate her demeanor prior to the issuance of the search warrant, this fact does not weigh against a finding of reliability. It is sufficient that Detective Alexander, who affirmed under

---

1. In his objections, the defendant moves this Court to recommit this matter to Magistrate Judge Seibert, permit the record to be reopened and to allow defense counsel to resume questioning regarding the criminal charges pending against Ms. Long at the time. Having found that Ms. Long's statement was credible and reliable regardless of any criminal charges pending against her, this Court declines the defendant's request.

oath that the information in the warrant application was truthful to the best of his knowledge, had the opportunity to meet face-to-face with Ms. Long and to assess her credibility and demeanor. *See DeQuasie,* 373 F.3d at 523 ("because an informant who meets face-to face with an officer provides the officer with an opportunity to assess his credibility and demeanor and also exposes himself to accountability for making a false statement, 'courts have had no difficulty distinguishing between cases involving face-to face encounters with informants and cases involving anonymous tipsters.'" (citing *United States v. Christmas,* 222 F.3d 141, 144 (4th Cir.2000))).

Fifth, the defendant's argument that Ms. Long's entire statement to the police was not credible because the officers did not observe an ongoing party at the defendant's residence when they drove by the defendant's house prior to seeking a search warrant is without merit. Even assuming that Ms. Long was misinformed or otherwise untruthful about the date or time that a party involving underage minors was scheduled to take place at the defendant's house, her statement was sufficiently reliable overall to support a finding of probable cause. Sixth, the defendant suggests that Magistrate Judge Seibert improperly treated Ms. Long's affirmation that her written statement was true as a presumption of truthfulness. Magistrate Judge Seibert, however, applied no such presumption. Rather, Magistrate Judge Seibert noted that Ms. Long's affirmation to the truthfulness of her statement simply tended to show that she was telling the truth. This is both a permissible and rational conclusion given that, as an identified citizen informant, Ms. Long could be held accountable for a false statement.

Finally, as to the defendant's seventh and eighth contentions, this Court finds

that Ms. Long's statement was sufficiently corroborated. Officers are not required to corroborate extraordinary facts before concluding that the testimony of an identified citizen informant is credible. *See United States v. Lalor,* 996 F.2d 1578, 1581 (4th Cir.1993)("Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct."); *Easton v. City of Boulder,* 776 F.2d 1441, 1449 (10th Cir. 1985)("the skepticism and careful scrutiny usually found in cases involving informants ... is appropriately relaxed if the informant is an ... ordinary citizen witness."). Thus, the officers' corroboration of the defendant's sex offender status and of Ms. Long's description of the defendant's residence and associated parking area was sufficient to support a determination of credibility.

Accordingly, after a thorough review of the record and the totality of the circumstances surrounding the issuance of the search warrant, this Court concludes that it was reasonable for both the investigating officers and Magistrate Hicks to conclude that Ms. Long's statement was reliable. This Court further concludes that Magistrate Hicks's finding of probable cause was well-supported and that the search warrant in this case was not constitutionally deficient.

### B. *Application of the Leon Good Faith Exception*

 Nonetheless, assuming for the sake of argument, that the search warrant in this case was defective, the defendant's motion to suppress would still be denied pursuant to the good faith exception set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under this exception, evidence obtained pursuant to a search warrant issued by a magistrate judge that was based on less

than probable cause may still be admissible provided that the police officers who obtained and executed the warrant relied on the warrant in good faith. *Id.*

In his objections to the report and recommendation, the defendant contends that the officers' reliance on the search warrant was unreasonable because they behaved recklessly in preparing the search warrant application. This objection is without merit. There is no evidence on the record that the officers presented the search warrant application to Magistrate Hicks with a reckless disregard for the truth. The fact that the officers did not include an affidavit in the search warrant, as is customary, does not support a finding of recklessness because it was reasonable for Detective Alexander to conclude that his oral oath of affirmation to the truthfulness of the material contained in the application was sufficient. Accordingly, pursuant to *Leon,* even if the search warrant in this case was deficient, the exclusionary rule would not apply.

### V. *Conclusion*

Because, after a *de novo* review, this Court concludes that the magistrate judge's recommendation is proper and the defendant's objections and supplemental objections to the report and recommendation lack merit, this Court hereby AFFIRMS and ADOPTS the magistrate judge's report and recommendation. Accordingly, the defendant's motion to suppress is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

1. Docket No. 27.

## REPORT AND RECOMMENDATION DEFENDANT'S MOTION TO SUPPRESS BE DENIED.

JAMES E. SEIBERT, United States Magistrate Judge.

### I. *INTRODUCTION*

#### A. *Background*

Defendant was the only defendant named in a twenty count indictment alleging production of child pornography in violation of Title 18, United State Code, sections 2251(a), (e).

#### B. *Motion*

On March 21, 2008, Defendant filed a Motion to Suppress Evidence.[1] The Government filed its response on April 8, 2008.[2]

#### C. *Recommendation*

Based upon a review of the record, the undersigned recommends that Defendant's Motion to Suppress be **DENIED** because 1) the search warrant complied with the requirements of the Fourth Amendment and 2) even had the warrant violated the Fourth Amendment, the *Leon* good faith exception applies.

### II. *FINDINGS OF FACT*

On May 18, 2007 at approximately 6:00 p.m., Detective Grishkevich of the Weirton Police Department was at the M & B Market in Weirton, West Virginia. Tina Long, the clerk at the market, asked to talk to the detective. Tina told Detective Grishkevich about the operation of a strip club at a private residence, her daughter's involvement at the club as a dancer, and asked whether it was lawful to operate a strip club in a private residence. The

2. Docket Nos. 42, 43.

detective said he wasn't sure and that it depended on the facts. When Detective Grishkevich later saw Tina's daughter, Heather Long, at the M & B Market, he told her he wanted to ask her a few questions about "something" she was involved in and asked whether she would come to the Weirton police station to speak with him.

At approximately 7:00 p.m., Heather arrived at the Weirton police station and voluntarily spoke with Detective Grishkevich and Detective Alexander. Heather described the operation of a strip club at a private residence, her involvement as a dancer, that minors were involved, and that the operator may be a registered sex offender. She described the residence where the alleged strip club was operated and the location she and others parked to enter the residence.

Detective Alexander and Lieutenant Shreiner attempted to locate the residence described by Heather but were unable to do so. They returned to the police station and picked up Heather so she could point out the residence. Heather identified the residence at 111 Sellitti Lane as the site of the alleged strip club. Heather's previous description of the residence and parking area matched the description of 111 Sellitti Lane and its accompanying parking area.

At approximately 10:30 p.m., Detective Alexander called Detective Grishkevich and informed him Heather had identified the residence at 111 Sellitti Lane as the site of the alleged strip club. Detective Grishkevich began drafting a search warrant application, including an affidavit establishing probable cause for the search of the residence located at 111 Sellitti Lane. He called Magistrate Hicks and informed him of the pending search warrant application.

At approximately 11:00 p.m., Heather, Detective Alexander, and Lieutenant Shreiner returned to the station. Heather provided another statement about her involvement in and the activities at the alleged strip club. Detective Alexander wrote a summary of her statement and asked Heather whether everything written was correct. Heather affirmed it was, and Heather, Detective Alexander, and Lieutenant Shreiner signed their names at the bottom of the statement. After continued discussions with Heather, Detective Alexander wrote an addition to Heather's statement. After Heather affirmed everything written in the addition was correct, Heather, Detective Alexander, and Lieutenant Shreiner signed their names under the addition. Heather was shown a photo of Defendant and positively identified him as the operator of the strip club. Heather left the station.

Magistrate Hicks arrived at the police station. The County offices for Hancock County are in New Cumberland, a considerable distance north of Weirton. All the Hancock County Magistrates live in Weirton. It is the common practice of all the Magistrates to go to Weirton Police Department to consider after-hours search warrant applications if there is no need for the facilities at the county offices. Detectives Alexander and Grishkevich briefed the Magistrate on their investigation, presented the Magistrate with evidence Defendant was a convicted and registered sex offender, and discussed with the Magistrate the search warrant application. The Magistrate asked whether Heather was credible. Detective Grishkevich said he had never worked with Heather and therefore could not say whether she was credible. Magistrate Hicks requested Heather's statement be attached to the search warrant application.

Detective Grishkevich attached Heather's statement to the search warrant application and labeled the statement, "Attach-

ment # 3." He then completed the search warrant application. The completed search warrant application consisted of 6 pages. The first page was titled "Affidavit and Complaint for Search warrant" and identified the property to be seized as "See Attachment # 1"; described the premises to be searched as "See Attachment # 2;" and identified Attachment # 3 as the facts in support of the affiant's belief. The second page consisted of the search warrant. The third page was titled, "Attachment # 1." The fourth page was titled, "Attachment # 2." The fifth and sixth page was comprised of "Attachment # 3." The affidavit prepared by Detective Grishkevich was not attached to the search warrant application.

Magistrate Hicks reviewed the search warrant application and suggested amendments be made to "Attachment 2," items to be seized. He asked Detective Alexander to raise his right hand and whether he swore or affirmed everything presented was true and accurate. Detective Alexander responded he so swore. Magistrate Hicks signed the search warrant. At approximately 1:30 a.m. on May 19, 2007, the search warrant was executed. Defendant was located inside the residence. Among other items, officers seized numerous photos, VHS tapes, computer equipment, compact discs, floppy disks, and a secret videotaping system. The VHS tapes contained footage of several underage girls at the residence in various stages of undress.

### III. *Motion to Suppress*

#### A. *Contentions of Parties*

Defendant argues the evidence seized from his residence should be suppressed because the search warrant relied on by the officers did not comply with the Fourth Amendment. Defendant also argues the illegality of the search cannot be cured by the *Leon* good faith exception.

The Government argues Defendant's Motion to Suppress should be denied because the search warrant complied with the Fourth Amendment. The Government further argues that even if the search warrant was defective, the evidence seized from Defendant's residence should not be suppressed because the *Leon* good faith exception applies.

#### B. *Analysis*

##### 1. *Whether the Search Warrant Complied with the Fourth Amendment.*

The Warrant Clause of the Fourth Amendment requires a search warrant 1) be issued by a neutral and detached magistrate, 2) contain a "particular description of the place to be searched, and the persons or things to be seized," and 3) be based upon "probable cause, supported by Oath or affirmation." *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir.1994). Defendant alleges the search warrant did not comply with these requirements of the Fourth Amendment because 1) there was no sworn affidavit or contemporaneous statements by the officer attached to the search warrant application; 2) Magistrate Hicks was not a neutral and detached magistrate; 3) there was no corroboration of Heather Long's statements or a determination Heather was credible; and 4) the information contained in the search warrant application and relied on by Magistrate Hicks did not support a finding of probable cause.

The Government argues the search warrant complied with the Fourth Amendment.

Each of Defendant's allegations are addressed in turn.

i. *"There was no sworn affidavit or contemporaneous statements by the officer attached to the search warrant application."*

Defendant argues the search warrant was defective because it was unaccompa-

nied by a sworn affidavit or sworn testimony from the Detectives establishing probable cause for the search. The Government concedes the Detectives did not submit a "narrative statement summarizing the investigation and the information believed to establish probable cause." (Plaintiff's Brief, p. 8). The Government argues, however, the Fourth Amendment does not require the facts establishing probable cause for the search be presented in the form of a sworn affidavit or testimony from the officer. The Government alleges the Fourth Amendment requires only that the facts establishing probable cause be supported by oath or affirmation.

The Fourth Amendment specifies, "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. However, "[t]he Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by 'Oath or affirmation.'" Clyburn, 24 F.3d at 617. Accordingly, a Magistrate may consider statements made by the officer or others in conjunction with the search warrant application, so long as the officer ultimately swears to the truth of those statements. United States v. Legg, 18 F.3d 240, 243 (4th Cir.1994).

In light of the above Fourth Circuit precedent, the Court finds the search warrant complied with the Fourth Amendment's "oath or affirmation" requirement, despite being unaccompanied by a traditional sworn affidavit from Detective Alexander. Detective Alexander attached Heather's statement where his sworn affidavit normally would be attached, and explained on the Affidavit and Complaint for Search Warrant that Heather's statement

was the "basis for his belief." Magistrate Hicks was also informed about Heather's identification of the residence and Defendant's status as a registered sex offender. At the conclusion of the presentation of the search warrant application, Detective Alexander affirmed to Magistrate Hicks that the information presented to the Magistrate was true to the best of his knowledge. The search warrant therefore complied with the Fourth Amendment's requirement that the information presented to the Magistrate be supported by "oath or affirmation."

ii. *"Magistrate Hicks was not a neutral and detached magistrate."*

Defendant alleges the search warrant was invalid because Magistrate Hicks was not "neutral and detached," as required by the Fourth Amendment. Specifically, Defendant alleges it was inappropriate for the Magistrate to 1) appear at the same police station he formerly worked at as Chief of Police; 2) direct Detective Alexander to attach Heather's statement to the application; and 3) direct Detective Alexander to include specific items in Attachment 2, "Property to be Seized." The Government contends the above conduct does not disqualify Magistrate Hicks as a "detached and neutral" magistrate.

The Fourth Amendment protects against unreasonable searches and seizures by, in part, requiring search warrants be issued by a "neutral and detached" magistrate. As explained by the Supreme Court,

"[t]he point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from their evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate

instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Accordingly, the magistrate may not serve as a "rubber stamp" for the police. *See United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Whether a magistrate was neutral and detached is an "individualized and contextual inquiry." *United States v. Ramirez,* 63 F.3d 937, 941 (10th Cir.1995).

The Court finds Magistrate Hicks acted as a "neutral and detached" magistrate. First, although Magistrate Hicks was the former Chief of Police at Weirton Police Department, and although Detective Grishkevich testified Magistrate Hicks was "the boss," there is no evidence the Magistrate's status as former Chief inappropriately influenced the Detectives' actions or statements. Second, the Magistrate's decision to meet the Detectives at the station was the product of his practice, and the practice of other Magistrates, for handling after-hours warrant requests, not an attempt to unduly influence the Detectives. Third, there is no evidence Magistrate Hicks had direct contact with Heather, was involved in any way in the drafting of her statement, or participated in the execution of the search warrant. Finally, the Magistrate's suggestion the Detectives attach Heather's statement or amend the contents of Attachment 2 does not indicate the Magistrate breached his duty as a neutral and detached magistrate. *See United States v. Evans,* 629 F.Supp. 1544, 1554 (D.Conn.1986) [holding the magistrate was "neutral" despite suggesting to the officers they include specific items in the warrant application.]; *Ramirez,* 63 F.3d at 941 [holding the magistrate's additions and alterations to the affidavit did not call into question the magistrate's neutrality, because they were "mere common sense extensions of the contents of the narrative portion of the same affidavit."]; *compare Lo–Ji–Sales, Inc. v. New York,* 442 U.S. 319, 321–324, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), [holding the town justice breached his duty as a neutral magistrate when he signed an open-ended search warrant, participated in the actual search and seizure, and allowed the warrant to be completed based on the results of the search].

iii. *"There was no corroboration of Heather Long's statements or a determination Heather was credible."*

Defendant argues Heather's statement should not have been relied on as supporting a finding of probable cause because her statement was not corroborated and because Heather's credibility was never investigated. The Government argues Heather's statement was properly relied on as supporting a finding of probable cause because the totality of circumstances established Heather was reliable and credible.

Probable cause may be supported by reliable information from an informant. The reliability of the information depends on the "totality of circumstances." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). One factor influencing the reliability of the information is the degree to which the information has been corroborated. *United States v. Miller,* 925 F.2d 695, 698–700 (4th Cir.1991). Officers need not, however, conduct an independent investigation aimed at corroborating the alleged criminal conduct or ascertaining the informant's credibility. *Id.* Rather, it is sufficient for the officers to corroborate "innocent" facts alleged by the informant as opposed to facts establishing criminal conduct, because where "an informant is shown to be right about some things, he is probably right about

other facts that he alleged, including the claim that the object of the tip is engaged in criminal activity." *Alabama v. White,* 496 U.S. 325, 331, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), relying on *Gates,* 462 U.S. at 244, 103 S.Ct. 2317.

Viewing the totality of circumstances confronting the Detectives and the Magistrate, the Court finds the officers reasonably concluded Heather's statement was reliable. First, it was Heather's mother, as opposed to Heather herself, who first approached the police. Second, Heather cooperated with the police despite being concerned she was "in trouble" and provided them with her name, birth date, social security number, and telephone number. *See Gates,* 462 U.S. at 233–34, 103 S.Ct. 2317 [holding "if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—rigorous scrutiny of the basis of his knowledge is unnecessary."]. Third, Heather's demeanor, the consistency of her statements, and her affirmation her written statement was true suggested she was telling the truth. Finally, the officers were able to corroborate Heather's belief a registered sex offender lived at the residence and her description of the residence and associated parking area. The corroboration of such "innocent" facts alleged by Heather was sufficient to establish the reliability of the remainder of her statement. *See White,* 496 U.S. at 331, 110 S.Ct. 2412.

iv. *"The information contained in the search warrant application and relied on by Magistrate Hicks did not support a finding of probable cause."*

Defendant argues the search warrant was not supported by probable cause because absent Heather's statement—which Defendant argues should have been disregarded, "the only concrete information presented to Magistrate Hicks was that Defendant was a registered sex offender who lived at 111 Sellitti Lane." Defendant argues such information was insufficient to support a finding of probable cause. The Government contends the search warrant was supported by probable cause.

A search warrant may only be issued upon a showing there exists probable cause to search the described location. *See* U.S. Const. amend. IV. "Probable cause" to search is described as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. However, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. 2317. Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found," *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), and may be established through any reliable source. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

▆▆▆▆ In reviewing the probable cause determination by a judicial officer, "the task of the reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton,* 466 U.S. 727, 728, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). Furthermore, "when reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issues the warrant." *United*

*States v. Wilhelm,* 80 F.3d 116, 118 (4th Cir.1996).

■ The Court finds the search warrant was supported by probable cause, or, facts establishing there existed a "fair probability" a search of 111 Sellitti Lane would reveal evidence of a violation of West Virginia Code section 61–8A–5.[3] First, Heather's statement established she was 19 years old and worked as a dancer at "Ray's Hideaway," a strip club operated out of the residence at 111 Sellitti Lane; that she was present when Defendant took photos of a minor engaging in sexually explicit poses; that she and other girls were paid by Defendant to dance and perform lap dances and attend VIP rooms with customers. As discussed above, the "totality of circumstances" surrounding Heather's statement established its reliability. Second, there was evidence Defendant was a registered sex offender and lived at 111 Sellitti. The entirety of evidence was sufficient to "warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *See Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

For the above reasons, the Court finds Defendant's challenges to the validity of the search warrant are without merit.

### 2. *Whether the Leon Good Faith Exception Applies.*

In the event the Court found the search warrant was defective,[4] the Government argues the evidence seized in Defendant's residence should *not* be suppressed because the *Leon* "good faith" exception applies. Defendant argues the *Leon* "good faith" exception does not apply.

In *Leon,* 468 U.S. at 920, 104 S.Ct. 3405, the Supreme Court held evidence seized pursuant to an invalidated search warrant should be suppressed *only* where exclusion would further the exclusionary rule's purpose of deterring improper police conduct. As the Court explained, the rule is not well served, and evidence should *not* be suppressed, where, "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and [has] acted within its scope," even though later review of the warrant reveals it was legally insufficient. *Id.* at 920, 104 S.Ct. 3405. In contrast, where a "reasonably well-trained officer ... [should] have known that the search was illegal despite the magistrate's authorization," the evidence should be suppressed. *Id.* at 922, 104 S.Ct. 3405. The Court in *Leon* identified four situations where an officer's reliance on the validity of a warrant could not be construed as reasonable:

1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;

2) the magistrate wholly abandoned his detached and neutral judicial role;

3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;

---

3. A violation of section 61–8A–5 occurs when, "[a]ny adult who, with knowledge that a person is a minor or who fails to exercise reasonable care in ascertaining the age of a minor, hires, employs, or uses such minor to produce obscene matter or to do or assist in doing any sexually explicit conduct...." W. Va.Code § 61–8A–5 (2007).

4. The Court did *not* find the search warrant was defective. Nevertheless, in the interest of thoroughness, the Court addresses whether the *Leon* good faith exception applies.

4) the warrant was so facially defective, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid."

*Leon,* 468 U.S. at 923, 104 S.Ct. 3405.

Assuming, arguendo, the search warrant was defective, the Court agrees with the Government that the *Leon* good faith exception would apply to cure the illegality of an otherwise warrantless search. First, there is no evidence the Detectives misled Magistrate Hicks at any point. Second, there is no evidence Magistrate Hicks abandoned his role as a neutral and detached magistrate. Third, there is no evidence the warrant was based on an affidavit "so lacking in probable cause." As discussed above, probable cause was established by Heather's partially-corroborated statement, evidence of her identification of the residence, and evidence Defendant was a registered sex offender. Finally, there is no evidence the warrant failed to particularize the place to be searched or items to be seized.

### C. *Recommendation*

Based upon a review of the record, the undersigned recommends that the petitioner's Motion to Suppress be **DENIED** because 1) the search warrant complied with the requirements of the Fourth Amendment and 2) even had the warrant violated the Fourth Amendment, the *Leon* good faith exception applies.

Within ten (10) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Judge Frederick P. Stamp, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir.1985): *United States v. Schronce,* 727 F.2d 91 (4th Cir.1984), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the defendant and counsel of record, as applicable.